UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 MISC 258

----------------------------------------x

In re Application of THE COALITION TO PROTECT : Case No. 14-MC ____
CLIFTON BAY and LOUIS BACON for an Order :
Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for : DECLARATION OF
Use in Foreign Proceedings. : STEPHEN J. FERALIO



----------------------------------------x

I, Stephen J. Feralio, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am 28 years old. I am formerly a resident of Los Angeles, California.

2. In 2008, I received a Certificate in Filmmaking from Los Angeles Film School in Los Angeles, California. Since graduating, I have worked as a creative director, director, videographer, photographer, production assistant, freelance video editor and graphic designer. From May 2011 until July 2013, I worked as an independent contractor, creative director for Nygård International. I returned to work for Nygård International for a brief period beginning in January 2014. I am currently the creative director for Flightpath Mediahouse, a company I co-founded specializing in promotional videos for resorts and travel.

A. **LOUIS BACON AND PETER NYGÅRD**

3. In or about the week of March 24, 2014, unsolicited I called the offices of Louis Bacon. This was the first time I had ever attempted to make contact with Mr. Bacon. The purpose of my call was to inform Louis Bacon that I was in possession of video footage of Peter Nygård that contained information relevant to Louis Bacon's ongoing disputes with Mr. Nygård and other matters.

4. After attempting to reach Mr. Bacon, I was connected with Zack Bacon, and we spoke on the phone for approximately twenty minutes. I introduced myself using the pseudonym "Mark Beauchamp" and provided an email address under that pseudonym in order to conceal my

true identity. I did not reveal my true identity because I feared retaliation by Mr. Nygård if he were to learn I had contacted Louis Bacon. During this call, Zack Bacon informed me that Louis Bacon's private investigator, Jack Palladino, or another investigator, would contact me to assess the information I was prepared to provide to Louis Bacon. Zack Bacon also provided me with his email address.

5. On or about March 28, 2014, I sent an email to Zack Bacon from an email address in the name of "Mark Beauchamp" that I had created, advising Mr. Bacon of a cellular telephone number where I could be reached.

6. On April 1, 2014, I sent an email to Zack Bacon requesting to speak either to him or to Jack Palladino. Later that day, I received a telephone call from Mr. Palladino. I suggested that we meet the following week.

7. On April 7, 2014, I met with Mr. Palladino and one of his associates at the Park 55 Wyndham Hotel in downtown San Francisco at approximately 7:00 p.m. At Mr. Palladino's insistence, I disclosed my true identity at the meeting, and explained that I had used a pseudonym for fear of retaliation by Mr. Nygård and because I did not know who, if anybody, I could trust. During this meeting, I explained that I have video files of Mr. Nygård that would be relevant to Mr. Bacon, for a number of reasons. Mr. Palladino told me that he would discuss with his client and his client's counsel my offer to furnish the videotapes, and he would get back to me shortly.

8. On May 1, 2014, I met with Mr. Palladino, and he explained that Louis Bacon's attorneys planned to bring a legal action in New York to obtain permission from the Court for Feralio to turn over the video files. He therefore asked that I travel to New York to meet with Louis Bacon's attorneys.

9.  On May 15, 2014, I met with Louis Bacon's attorneys and Mr. Palladino at the New York offices of Gibson Dunn & Crutcher LLP ("Gibson Dunn"). During this meeting, the Gibson Dunn attorneys informed me that, to obtain the video files in my possession, they would seek, on behalf of Mr. Bacon and an environmental coalition called Save The Bays, a court order for the production of the video files. I was naturally concerned about my involvement in such a public proceeding given my knowledge of and experience with Mr. Nygård. Gibson Dunn suggested that I retain an attorney to provide me with legal advice. As a result, I hired Steven D. Feldman of the law firm Herrick, Feinstein LLP and Hector Pacheco of Pacheco LLP to represent me in this matter and related matters.

10. Once informed that Louis Bacon and Save The Bays would initiate litigation to obtain the video files, I reiterated at the May 15, 2014 meeting my serious and legitimate concerns for my and my family's physical well-being and safety. I am aware that Mr. Nygård has a history of violent behavior and fits of rage, and using harassment and financially ruinous litigation to intimidate those who speak out against him. Even putting aside what I have personally witnessed over the course of the two years I was a contractor for Nygård International, I am aware from reviewing videos and articles available on the internet that Mr. Nygård intimidates, berates, and harasses employees for perceived infractions. For example, on or about April 9, 2010, the Canadian Broadcasting Corporation ("CBC") broadcast a 45 minute documentary about Mr. Nygård on the CBC News show "The Fifth Estate" titled "Peter Nygård -- Larger than Life." In the documentary, former employees of Mr. Nygård provided first-hand accounts of Mr. Nygård's explosive temper, which often resulted in "marathon sessions of screaming at people," of the "verbal and psychological abuse and [] intimidation" that Mr.

Nygård subjects his employees, and of Mr. Nygård's use of litigation to harass and intimidate his former employees.

11. Mr. Nygård's abusive use of the legal system to silence those who try to expose him is also detailed in a *Forbes* article published on November 18, 2010 and titled, "Peter Nygård Answers to No One." The article states that Mr. Nygård "[p]unch[es] back hard" by "su[ing] his accusers and intimidat[ing] his critics with a small army of lawyers" initiating legal actions for everything from copyright infringement, to defamation, to criminal conspiracy. The *Forbes* article also recounts an incident in which Mr. Nygård allegedly slammed a bedroom door shut on the hand of a former girlfriend.

12. I am so concerned about Mr. Nygård's aggressive tactics that my counsel and I have created forensic duplicates of the hard drives containing the video footage and are storing them in a safe location in New York, so that the video footage remains protected and may be available to this Court under all circumstances.

13. Despite my concerns of retaliation by Mr. Nygård, I am willing to come forward and to turn over the video evidence in my possession because it is the right thing to do. Mr. Nygård brought me into his dispute with Mr. Bacon by directing me to create videos defaming Mr. Bacon. Fearing termination, I complied. It is time I made amends for that conduct by providing full and complete disclosure of my involvement, and the activities of others who participated, in Mr. Nygård's smear campaign against Mr. Bacon and other activities.

14. I have not received any payment from Mr. Bacon, or any affiliate or agent of Mr. Bacon (including any investigator or attorney), for my testimony or for the evidence in my possession. I have, however, entered into an agreement between myself and Belvedere Property Management, LLC ("BPM"), a property management entity owned by Louis Bacon, dated July

31, 2014. Among other things, this agreement requires that BPM pay for my legal fees in this and any other related proceeding and that BPM indemnify me in connection with any retaliatory lawsuit filed by Mr. Nygård. To date, I have been reimbursed approximately $2,300 for travel and other expenses related to meeting with Mr. Bacon's counsel on May 15, 2014, and, more recently, meetings with my own counsel. A true and correct copy of that agreement is attached here as Exhibit 1.

15. In addition, because of the existing threat to my safety, I recently relocated to live in another city, which also required me to give up my job. Having relocated to a new city, I do not currently have employment or income in that city. Because I am relocating as a result of the imminent public revelation of my assistance to Mr. Bacon and the real threat to my safety that results from my actions, BPM has agreed to pay for my one bedroom rental apartment, and to provide subsistence payments while I remain unemployed.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 11, 2014.

_____
Stephen J. Feralio