UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re Application of THE COALITION TO PROTECT : Case No. 14MISC258
CLIFTON BAY and LOUIS BACON for an Order :
Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for : DECLARATION OF
Use in Foreign Proceedings. : JACK PALLADINO
 :
-----------------------------------------------------------------x

I, JACK PALLADINO, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney and a licensed private investigator. In 1967, I received a Bachelor of Arts degree, with a major in English and a minor in Political Science from Cornell University, followed by a Masters in Political Science from the University of California, Berkeley in 1968. In 1975, I received a law degree from the University of California, Berkeley, School of Law. In 1977, I cofounded Palladino & Sutherland, a San Francisco-based private investigation firm. I am licensed in California to practice both as a private investigator and as a lawyer and have held both licenses for nearly four decades.

2. Gibson Dunn & Crutcher LLP ("Gibson Dunn") retained Palladino & Sutherland to assist in the representation of Moore Capital Management L.P. ("MCM") and its founder, Louis Bacon ("Mr. Bacon"). My firm's services have at all times been under the direction of Gibson Dunn.

A. **DISPUTES IN THE BAHAMAS BETWEEN LOUIS BACON AND PETER NYGÅRD**

3. Based on my involvement in this matter, I am aware that Mr. Bacon and Peter Nygård ("Nygård") are neighbors in the Lyford Cay community of the Bahamas.

4.      I am also aware that, in or about mid-2010, a coordinated and well-organized smear campaign of Mr. Bacon began with defamatory publications in the Bahamas press and online, through anti-Bacon attack blogs, anti-Bacon rallies, Twitter feeds, and YouTube.  There is evidence to believe that Nygård was behind this smear campaign and certain of the defamatory publications, as described in greater detail in the accompanying declaration of Jenny Afia.  Nygård's precise involvement in the smear campaign and the internal operations of the smear network that Nygård appears to have assembled, however, are unknown.  Certain of the most odious and patently false defamatory publications—such as YouTube videos created by "Vincent Roy" and "Paul Pierce" in which Mr. Bacon is accused of being a murderer, insider trader, and avowed member of the KKK—could not previously be linked to Nygård or anybody else.

5.      As described in greater detail below, Stephen Feralio ("Mr. Feralio"), a witness who resides in the United States, has in his possession evidence disclosing Nygård's involvement in and operation of this smear campaign.  That evidence includes both testimony by Mr. Feralio regarding his own involvement in that smear campaign at Nygård's direction, as well as terabytes (a measure of storage capacity; one terabyte can equal one hundred hours or more of digital video) of audio and video recordings that likely contain relevant information for use in the various lawsuits filed by Mr. Bacon and the environmental coalition he helped found, The Coalition to Protect Clifton Bay, more commonly known as "Save The Bays" ("Save The Bays").

### C.  MR. FERALIO CONFIRMS HIS INVOLVEMENT IN THE NYGÅRD-ORCHESTRATED SMEAR CAMPAIGN OF MR. BACON

6. On March 31, 2014, I was informed that, a few days prior, a man calling himself "Mark Beauchamp" reached out to Zack Bacon, a Managing Director of MCM and a member of its Board of Directors, claiming to possess information, including video and audiotape recordings, about Nygård. "Beauchamp" claimed to have obtained such information while working as a filmmaker and editor for Nygård. I was informed that "Beauchamp" volunteered that he had incriminating footage (the "Footage") relevant to Mr. Bacon's disputes with Nygård. "Beauchamp" further stated he was willing to share the audio portion of the incriminating Footage. Zack Bacon informed "Beauchamp" that I would follow up with him to investigate these claims.

7. On April 1, 2014, "Beauchamp" emailed Zack Bacon, stating, "I would like to speak with either you or Jack today." Attached hereto as Exhibit 1 is a true and correct copy of the April 1, 2014 email from "Beauchamp" to Zack Bacon.

8. On April 1, 2014, following receipt of the email attached as Exhibit 1, I called "Beauchamp" at the number he had previously provided to Zack Bacon. During the course of our call, "Beauchamp" indicated a willingness to meet in person. He also expressed fear of retaliation from Nygård if Nygård discovered he was communicating with someone affiliated with Mr. Bacon.

**My April 7, 2014 Meeting With Mr. Feralio**

9. My first meeting with "Beauchamp" occurred on Monday April 7, 2014, at the Park 55 Wyndham Hotel in downtown San Francisco (the "Park 55"). Prior to the meeting, I attempted to investigate "Mark Beauchamp," with little success. I therefore concluded that this was a pseudonym used by the individual claiming to be "Mark Beauchamp."

3

10. I arrived at the Park 55 with one of my associates. Upon our arrival, "Beauchamp" approached us and introduced himself. "Beauchamp" immediately informed us of his concern that Nygård would discover he was communicating with someone affiliated with Mr. Bacon, and, as a result, might physically harm him.

11. Early in the course of the meeting, I asked that "Beauchamp" identify his true name and identity, which "Beauchamp" did, stating that his real name is "Stephen Feralio."

12. Mr. Feralio then volunteered that he was hired by Nygård International, shortly after graduating from film school, in or about May 2011, to create and edit video footage of Nygård around the world, including in New York and in the Bahamas. From May 2011 through July 2013, Mr. Feralio worked fulltime filming and producing footage of and for Nygård. Mr. Feralio explained that he took a six-month leave from his filming in or about July 2013, before briefly resuming his filming of and for Nygård. When not traveling, Mr. Feralio lived in Nygård International staff quarters in Marina del Ray, California, and also stayed at Nygård's residence in the Bahamas, known as Nygård Cay.

13. In the conversation that followed, Mr. Feralio volunteered that Nygård hired him to capture his life on videotape, and that he therefore accompanied and filmed Nygård seven days a week, for many hours each day, including while Nygård met with government officials and others. Mr. Feralio accompanied Nygård and filmed him in New York, the Bahamas, and various locations where Nygård pursued a site to open a purported anti-aging clinic, including China, Panama, Belize, Korea, and Canada, among other locations. Mr. Feralio explained that, among other things, he filmed Minister Louis Farrakhan, the controversial leader of the religious group known as "Nation of Islam." Minister Farrakhan arrived in the Bahamas on Nygård's personal jet and then spoke at a rally at Nygård Cay denouncing Mr. Bacon as a racist. Mr.

Feralio described this event as part of Nygård's smear campaign against Mr. Bacon. Mr. Feralio also volunteered that Nygård instructed Mr. Feralio to participate in that smear campaign by creating defamatory videos about Mr. Bacon.

14. Mr. Feralio informed me that he had in his possession ten to twelve terabytes of video footage as a result of his work filming Nygård. I understand that such a large quantity of footage might consist of as many as one thousand hours or more of digital video footage, depending on the resolution of the video.

15. At this initial meeting with Mr. Feralio. Mr. Feralio also informed me that he had evidence of Nygård's political corruption in the Bahamas. Mr. Feralio showed me approximately 30 seconds of video footage on his iPad, in which Nygård appeared to be talking on the phone and stating that he (Nygård) can use his influence with certain unidentified politician(s) to achieve some unspecified goal because the politician(s) owe Nygård. It was hard to hear the precise words used at the time due to background noise at the location where I was meeting Mr. Feralio.

16. Also at this initial meeting, Mr. Feralio stated that he has disassociated himself from Nygård as a result of Nygård's abusive behavior towards his staff, including Mr. Feralio, his cheating Mr. Feralio out of thousands of dollars, his financial manipulation of Bahamian politics for his own personal gain, and his involving Mr. Feralio in a personal smear campaign against Mr. Bacon. Mr. Feralio stated that he would thus be willing to provide the Footage to Mr. Bacon. My meeting with Mr. Feralio lasted approximately 45 minutes. I concluded the initial meeting with Mr. Feralio and told him that we would consider the information he was offering and would be in touch shortly.

**Mr. Feralio Provides Evidence of Nygård's Smear Campaign Against Mr. Bacon**

17.     The following day, on April 8, 2014, at 11:47 am, I received an unsolicited email from Mr. Feralio in which he wrote: "It was nice meeting with you yesterday. . . . The Youtube Account Paul Peirce was created during the Bacon smear campaign and I was put in charge of the videos by Nygard. If I refused I would have been fired." Attached to the email was a link to the YouTube account for "Paul Pierce" and screenshots of "notes I [Mr. Feralio] was given directly by Nygard for the videos," including handwritten notes of instructions from Nygård. A true and correct copy of this email and the accompanying attachments from Mr. Feralio are attached hereto as Exhibit 2.

18.     Those notes included detailed instructions from Nygård regarding what the videos should include. They provide explicit instructions to make the videos "more damaging" and reference specific themes, screen shots, and clips of videos that should be—and ultimately were—included in the videos. Nygård's instructions include extremely detailed edits requesting that segments be reordered, new segments be included, font changes, and rewording of captions.

19.     Nygård's instructions are directly reflected in the final videos that were published on YouTube under "Paul Pierce." For example, the notes contain Nygård's instructions that Mr. Feralio include clips and statements falsely accusing Mr. Bacon of being a racist such as: "Bacons grandfather was grand dragon of the KKK," "Controlled by a KKK members," "LF [Minister Farrakan] says bacon will be gone with the wind," "PUT IN ABOUT BACON TRYING TO STOP NYGARD FROM HAVING PEOPLE OVER," and "Make is [sic] seem like bacon attacking pjn [Mr. Nygård] because of his love for Bahamians and blacks." They also contain instructions to "INCORPORATE FARRAKHAN IN EVERY VIDEO AND BACON LIED IN EVERY VIDEO." These notes appear to indicate that Mr. Nygård exploited Minister

Farrakhan to further his smear campaign by fabricating that Mr. Bacon is a racist and controlled by the KKK.  The notes also contain instructions to state that the "Tribune tried to drive a wedge between LF [Minister Farrakan] and PJNs [Nygård] unbreakable bond" and that it "Lie[d] to protect Bacon? $$$??"

20. The notes also contain Nygård's instructions to emphasize the theme that Mr. Bacon is a "liar," stating:  "Louis Bacon is a liar, a bunch of different people saying he's a liar and cutting them together" and specifically "Bacon lied. Bacon did not … save Clifton."  The instructions state that the videos should demonstrate that "BACON WON [the Audubon award] FOR SABING [sic] ENVOIRNMENT [sic]. TRUE BATTLE WAS TO SAVE THE HERITAGE" and that "BACON WAS NOT EVEN PRESENT" when the true fight over protecting Clifton Bay occurred.

21. The notes also contain Nygård's instructions to falsely claim that "Bacon installed military sound cannons to drown out Bahamian people's festivities."

22. As stated above, in addition to the screen shots of notes that Mr. Feralio sent (attached as Exhibit 2), Mr. Feralio also identified himself as the creator, at Nygård's direction, of the defamatory "Paul Pierce" YouTube videos that defame Mr. Bacon.

**Mr. Feralio's Agreement With Nygård International**

23. On April 17, 2014, Mr. Feralio sent me an email with copies of two written agreements that he stated he signed regarding his work for Nygård International.  Mr. Feralio sent me these agreements in response to my request in the days prior for a copy of any agreements governing his relationship with and work for Nygård.  This was the first time that I had learned that Mr. Feralio had any written agreement with Nygård International.

24. Attached hereto as Exhibit 3 is a true and correct copy of an email dated April 17, 2014 from Mr. Feralio to me bearing the subject line, "Lets talk at 11 am and here's a little reading for you." Attached to that April 17, 2014 email were copies of two written agreements. True and correct copies of those agreements are attached hereto as Exhibits 4 and 5.

25. Exhibit 4 is a true and correct copy of a document dated November 21, 2011, which consists of seven pages. Exhibit 4 is unsigned and is identified as an "Independent Contractor Agreement" with Nygård International for work by Mr. Feralio commencing on September 10, 2011 for a term of one year (the "2011 Agreement"). Page 5 of the 2011 Agreement was not included in the original email from Mr. Feralio. Mr. Feralio subsequently e-mailed me a copy page 5 of the 2011 Agreement, which I include in Exhibit 4 hereto.

26. Exhibit 5 is a true and correct copy of a document dated February 15, 2013, which consists of ten pages. Exhibit 5 is an unsigned copy of an "Independent Contractor Agreement" for a "Creative Director" with Nygård International for work commencing on September 10, 2012 and ending February 28, 2014 (the "2013 Agreement").

27. Since receiving these agreements, I have ceased all substantive conversations with Mr. Feralio and have not sought to elicit information related to the content of the Footage or his personal knowledge of activities related to Nygård or his filming.

### Mr. Feralio's Meeting in New York City With Gibson Dunn Attorneys

28. On May 15, 2014, Mr. Feralio travelled to New York at my request and met with counsel for Gibson Dunn. The meeting lasted approximately two-and-one-half hours and was attended by counsel and me.

29. During the May 15 meeting, Gibson Dunn informed Mr. Feralio that it would be initiating, on behalf of Mr. Bacon and/or Save The Bays, an action pursuant to 28 U.S.C. § 1782 (the "1782 Action") in the United States to seek the Footage and any other information and evidence possessed by Mr. Feralio. Gibson Dunn further informed Mr. Feralio that, as a result of his agreements with Nygård International, and in an abundance of caution, neither Gibson Dunn nor I would inquire of Mr. Feralio, either at that meeting or any time thereafter, about Mr. Nygård or Mr. Feralio's work for Nygård International, unless and until authorized to do so in connection with the Section 1782 Action. Mr. Feralio was specifically instructed not to provide Gibson Dunn or me any information regarding Nygård or Mr. Feralio's work for Nygård International, and neither Gibson Dunn nor I asked Mr. Feralio any questions regarding these matters.

30. Mr. Feralio did, however, volunteer information about himself. He stated that he feared for his and his family's safety if Nygård were to learn that he had contacted Mr. Bacon or a representative of Mr. Bacon about the Footage or if Nygård learns that Mr. Feralio may share the Footage with Mr. Bacon. He repeated his concern more than once, even suggesting that Nygård "could make it look like a suicide."

31. Mr. Feralio also explained that he is the only person with a complete copy of the Footage Mr. Feralio filmed of Nygård.

32. Mr. Feralio reconfirmed that he has in his possession "more than a thousand hours" of footage consisting of 9 to 10 terabytes and that the Footage "spans the entire" time he was under contract by Nygård International. Mr. Feralio noted that the Footage includes both raw and edited footage, including videos that are "online now" at YouTube. He noted that the

work he did for Nygård was, in part, intended for public consumption, and not just for Mr. Nygård's personal use.

33. When asked generally about his ties to New York, Mr. Feralio explained that, from 2011 to 2013, he traveled to New York six to eight times while working for Nygård and that his trips ranged from a few days to more than one month on one occasion.

34. Mr. Feralio further explained that his most recent trip to New York occurred in April 2014, because Mr. Feralio was ordered by summons to appear for violations of a local ordinance barring his use of a helicopter drone equipped with a camera in Times Square. Mr. Feralio used such a helicopter drone while filming for Nygård International. Mr. Feralio paid the summons.

35. Mr. Feralio stated that he signed the 2011 Agreement, but that he did not retain an executed copy. Mr. Feralio did not believe that he signed the 2013 Agreement.

I declare under penalty of perjury that the foregoing is true and correct. Executed in San Francisco, California, on August 11, 2014.

Jack Palladino