UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

In re Application of THE COALITION TO PROTECT
CLIFTON BAY and LOUIS BACON for an Order
Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for
Use in Foreign Proceedings.

Case No. 14 MC 258

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO INTERVENE AND
OPPOSITION TO 28 U.S.C. § 1782 APPLICATION AND TO QUASH SUBPOENA**

KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP

Marc E. Kasowitz
Aaron H. Marks
Kenneth R. David

1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Nygård International Partnership,
Nygård Inc., and Peter Nygård*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.  THE NYGÅRD PARTIES ARE ENTITLED TO INTERVENE
    AND HAVE STANDING TO OPPOSE THE APPLICATION ...................................... 3

    A.  The Nygård Parties Are Entitled To Intervene As Of Right ................................ 3

    B.  The Nygård Parties Have Standing To Oppose
        The Application And Quash The Subpoena ........................................................ 4

II. THE COURT SHOULD DENY THE APPLICATION ................................................. 7

    A.  Petitioners Can Seek The Misappropriated Materials
        From Feralio In A Bahamian Court .................................................................. 7

    B.  The Application Is An End-Run Around
        The Bahamian Proof-Gathering Limits ........................................................... 10

    C.  The Application Is Unduly Intrusive .................................................................. 12

    D.  The Application Is Impermissible Fishing Expedition To Harass
        The Nygård Parties……………………………………………………… ..12

        1.  The Application Is A Fishing Expedition ................................................. 13

        2.  The Application Is Nothing More Than A Vehicle To Harass
            The Nygård Parties……………………………………………… 13

III. THE COURT SHOULD NOT FACILITATE DISCOVERY
     OF MISAPPROPRIATED MATERIALS......................................................................... 14

IV. THE  CONTRACTOR AND ASSIGNMENT AGREEMENT
    DISPUTES SHOULD BE ADJUDICATED IN CALIFORNIA .................................. 19

CONCLUSION................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allocco Recycling, Ltd. v. Doherty*,
   220 F.R.D. 407 (S.D.N.Y. 2004) ..................................................................5

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*,
   2005 U.S. Dist. LEXIS 5378 (S.D.N.Y. 2005) ...........................................3

*Ashman v. Solectron Corp.*,
   2008 WL 5071101 (N.D. Cal. Dec. 1, 2008) .............................................14

*Bridgeport Guardians, Inc. v. Delmonte*,
   602 F.3d 469 (2d Cir. 2010) ......................................................................3, 4

*Brocade Communs. Sys. v. A10 Networks, Inc.*,
   2011 U.S. Dist. LEXIS 30227 (N.D. Cal. Mar. 23, 2011) .....................17, 18

*Chambers v. Capital Cities/ABC*,
   159 F.R.D. 441 (S.D.N.Y. 1995) ...............................................................19

*Dombrowski v. Bell Atl. Corp.*,
   128 F. Supp. 2d 216 (E.D. Pa. 2000) .........................................................6

*During v. City Univ. of N.Y.*,
   2006 U.S. Dist. LEXIS 10133 (S.D.N.Y. Mar. 10, 2006) ........................5

*Euromepa, S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995) .......................................................................7

*Estate of Ungar v. Palestinian Auth.*,
   332 Fed. Appx. 643 (2d Cir. 2009) ............................................................5

*Faunus Group Int'l, Inc. v. Ramsoondar*,
   2014 U.S. Dist. LEXIS 67838 (S.D.N.Y. May 16, 2014) .....................19, 20

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
   82 F. Supp. 2d 126 (S.D.N.Y. 1999) .........................................................4

*Goldstein v. Time Warner New York City Cable Group*,
   3 F. Supp. 2d 423 (S.D.N.Y. 1998) ..........................................................20

*Herrera v. Clipper Group, L.P.*,
   1998 U.S. Dist. LEXIS 6454 (S.D.N.Y. May 5, 1998) .............................14

*Hunter Consulting v. Beas,*
2012 U.S. Dist. LEXIS 176317 (C.D. Cal. Dec. 10, 2012) ....................................................18

*In re Application of Apotex Inc. for Order to Obtain Discovery for Use in Action
Pending Before the Federal Court in Canada (Case No. T-161-07),*
2008 U.S. Dist. LEXIS 109420 (S.D.N.Y. Dec. 30, 2008) ....................................................11

*In re Application of Chevron Corp.,*
736 F. Supp. 2d 773 (S.D.N.Y. 2010) ..................................................................................5

*In re Application of Eli Lilly & Co.,*
2010 WL 2509133 (D. Conn. June 15, 2010) .........................................................................19

*See In re Application of Leret,*
2014 WL 2803573 (D.D.C. June 20, 2014) ...........................................................................8

*In re Application of Microsoft Corp.,*
428 F. Supp.2d 188 (S.D.N.Y. 2006)................................................................................9, 10

*In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress
Inv. Group LLC,*
2014 U.S. Dist. LEXIS 95578 (S.D.N.Y. July 8, 2014) ....................................................6-7

*In re Fed'n Internationale de Basketball, for a Subpoena Pursuant to 28 U.S.C. 1782,*
117 F. Supp. 2d 403 (S.D.N.Y. 2000).................................................................................19

*In re JDS Uniphase Corp. Sec. Litig.,*
238 F. Supp. 2d 1127 (N.D. Cal. 2002) .............................................................................19

*In re Kreke Immobilien KG,*
2013 U.S. Dist. LEXIS 160283 (S.D.N.Y. 2013).................................................................13

*In re Letter of Request From Crown Prosecution Service,*
870 F.2d 686 (D.C. Cir. 1989).........................................................................................4

*In re Letter Rogatory from Justice Court, Montreal,*
523 F.2d 562 (6th Cir. 1975) ..........................................................................................4

*In re Mare Shipping Inc.,*
2013 U.S. Dist. LEXIS 152337 (S.D.N.Y. Oct. 23, 2013) ....................................................9

*In re Request for Int'l Judicial Assistance,*
687 F. Supp. 880 (S.D.N.Y. 1988) ...................................................................................4

*Intel Corp. v. Advanced Micro Devices, Inc,*
542 U.S. 241 (2004)........................................................................................... *passim*

*John Doe Co. v. United States*,
    79 Fed. Appx. 476 (2d Cir. 2003) ........................................................................6

*Kulzer v. Esschem, Inc.*,
    390 F. App'x 88 (3d Cir. 2010) ..........................................................................19

*Kuwait Inv. Auth. v. Sarrio S.A. (In re Sarrio, S.A.)*,
    119 F.3d 143 (2d Cir. 1997)................................................................................4

*Lahr v. Fulbright & Jaworski, L.L.P.*,
    1996 WL 34393321 (N.D. Tex. July 10, 1996)................................................14

*McGrane v. Reader's Digest Ass'n, Inc.*,
    822 F. Supp. 1044 (S.D.N.Y. 1993)..................................................................19

*Metallgesellschaft v. Hodapp (In re An Order Permitting Metallgesellschaft Ag to Take
    Discovery)*,
    121 F.3d 77 (2d Cir. 1997)................................................................................11

*Mirkin v. Winston Res., LLC*,
    2008 U.S. Dist. LEXIS 91492 (S.D.N.Y. Nov. 10, 2008) ...................................5

*Nygård, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027, 72 Cal. Rptr. 3d 210 (2008)................................17, 18, 21

*Pallares v. Kohn (In re Chevron Corp.)*,
    650 F.3d 276, 289 n.16 (3d Cir. 2011)................................................................6

*Pillsbury, Madison & Sutro v. Schectman*,
    55 Cal. App. 4th 1279 (1st Dist. 1997),
    *review denied* 1997 Cal. LEXIS 6197 (Cal. Oct. 1, 1997) ...................................18

*Random Ventures, Inc. v. Advanced Armament Corp.*, LLC,
    2013 U.S. Dist. LEXIS 20513 (S. D.N.Y. Feb. 5, 2013) ......................................6

*Robinson v. Louie (In re Louie)*,
    1997 Bankr. LEXIS 1898 (Bankr. N.D. Cal. Sept. 2, 1997)................................18

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004)................................................................................6, 9

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
    692 F.3d 1009 (9th Cir. 2012) ..........................................................................17

*United States v. Massachusetts Inst. of Tech.*,
    129 F.3d 681 (1st Cir. 1997) ..............................................................................7

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994)......................................................................................4

*Xerox Corp. v. A&M Printing*,
  2013 U.S. Dist. LEXIS 74179 (C.D. Cal. May 20, 2013) ......................................17

**Statutes**

28 U.S.C. § 1782.......................................................................................... *passim*

Fed. R. Civ. P. 24........................................................................................3, 4

Fed. R. Civ. P. 26...........................................................................................7

**Other Authorities**

*Bacon v. Brown and McKinney*,
  No. 2012/COM/gen/00503 .................................................................................10

*Bacon v. Jones Communications Limited and Jones*,
  No. 2012 CLE/gen/00838 ...................................................................................10

Charles Alan Wright & Arthur R. Miller,
  Federal Practice and Procedure § 2459 (3d ed. 2008) .........................................5

1-20 CA Antitrust and Unfair Competition Law § 20.04 .........................................19

Nygård International Partnership, ("Nygård International"), Nygård Inc. ("Nygård Inc.", together with Nygård International, the "Nygård Companies"), and Peter Nygård (collectively, the "Nygård Parties") respectfully submit this memorandum of law in support of their motion to intervene and in opposition to the application and petition for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") to conduct discovery for use in foreign proceedings (the "Application") and to quash the subpoena ("Subpoena") filed by Louis Bacon ("Bacon") and The Coalition To Protect Clifton Bay (the "Coalition", and together with Bacon, the "Petitioners").[1]

## PRELIMINARY STATEMENT

The Application is an abuse of Section 1782 and the discovery process.  Not only does the Application undermine the purposes of Section 1782, but it further seeks to use this Court to endorse the outright theft of the Nygård Companies' video files and other materials (the "Misappropriated Materials"), and as a vehicle to blast salacious and frivolous allegations to the media.  The Application should be denied outright and the Subpoena quashed.

The *Intel* factors weigh heavily against the Application.  For example, even assuming that Feralio has a possessory right to the Misappropriated Materials − which he does not – he has agreed (in exchange for substantial monetary consideration) to appear and testify in any domestic or foreign proceeding concerning the Nygård Parties, including the subject Bahamian actions (the "Bahamian Actions").  This agreement with Petitioner Bacon nullifies any purported need for this Court to effectuate the Subpoena, as Feralio's deposition and the Misappropriated Materials are readily obtainable in the Bahamas, should a Bahamian court so order.  In short, in the very same agreement by which Feralio and the Petitioners unlawfully manufactured this proceeding, they made discovery through the Bahamas courts, where the underlying litigation is

---

[1]     Submitted herewith in support of the Nygård Companies' motion are the declarations of Aaron H. Marks, dated September 18, 2014 ("Marks Decl."), Daane Clifford, dated September 18, 2014 ("Clifford Decl."), and Thomas A. E. Evans, Q.C., dated September 18, 2014 ("Evans Decl.").

pending, equally plausible.  For this and other reasons further explained below, the Court should deny the 1782 Application.

The Subpoena also constitutes an abuse of the discovery process.  Feralio does not lawfully possess the Misappropriated Materials.  The applicable contracts are clear that the Misappropriated Materials belong to the Nygård Companies, not Feralio, and this Court should not permit the discovery process to be used to launder Feralio's theft.  Because the Subpoena is not properly directly to Feralio, it should be quashed.  And, even assuming there were a legitimate dispute about Feralio's possessory right as to the Misappropriated Materials (which there is not), the Nygård Companies and Feralio agreed that the California state court would be the exclusive jurisdiction for such a dispute to be adjudicated.[2]  Litigating this dispute in this proceeding contrived by Petitioners would be plainly inappropriate.

Finally, the Petitioners have demonstrated from the moment they commenced this proceeding that they would use it as a vehicle to misuse this Court for the purpose of disseminating salacious and sensational allegations not tied to the Application in any way.  Notwithstanding this Court's admonition during the September 11, 2014 hearing about this very subject, Petitioners' misconduct in this regard has continued unabated.[3]

There are accordingly overwhelming reasons for this Court to deny the Application and quash the Subpoena.

---

[2]     As the Nygård Companies previously informed the Court at to their intention (*see* Sealed Letter, dated September 10, 2014, per the request under Docket No. 30), the Nygård Companies initiated suit against Feralio and petitioner Bacon in Superior Court in Los Angeles on September 17.  (Marks Decl., Ex. A.)

[3]     Petitioners clearly caused a story to be published in the *Bahamas Tribune* on September 17 entitled "Nygård 'Obstruction of Justice' Claims," recounting Petitioners' utterly frivolous and scandalous allegations of criminal wrongdoing by Mr. Nygård.  (*See* Letter, dated September 18, 2014, Docket No. 42.)  The *Tribune* story is also now posted in several places on the internet.

## ARGUMENT

### I.   THE NYGÅRD PARTIES ARE ENTITLED TO INTERVENE AND HAVE STANDING TO OPPOSE THE APPLICATION

#### A.   The Nygård Parties Are Entitled To Intervene As Of Right

"Under Fed.R.Civ.P. 24(a)(2), '[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.'" *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (quoting Fed.R.Civ P. 24(a)(2)).  "[W]here a proposed intervenor's interests are otherwise unrepresented in an action, the interest requirement for intervention is no more burdensome than the standing requirement." *Id*. at 474.  The Nygård Parties easily satisfy these factors.[4]

It is beyond dispute that Feralio will not protect the Nygård Parties' interests in the Misappropriated Materials.[5]  Feralio has already disclosed a portion to Petitioners and has agreed to produce the rest in exchange for payment.  (Stephen J. Feralio Declaration ("Feralio Decl."), dated August 11, 2014, Docket No. 4 ¶¶ 4, 7, 14, Ex. 1; Jack Palladino Declaration ("Palladino Decl."), dated August 11, 2014, Docket No. 5, ¶ 15.)  This is more than sufficient to overcome the "minimal" burden required to demonstrate inadequate representation.  *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, No. 04-cv-10014 (PKL), 2005 U.S. Dist. LEXIS 5378, at *11-12 (S.D.N.Y. Mar. 30, 2005).

---

[4]   This motion is timely.  The Nygård Companies appeared on September 5, 2014, well before the September 10, 2014 deadline set by the Court in the August 13, 2014 Order to Show Cause, and within weeks of Petitioners' August 13, 2014 filing of the Application.  (Docket No. 9).

[5]   Petitioners should not be disputing this point.  (*See* Petitioners' Memorandum of Law in support of the Application ("Application Memo"), Docket No. 2, at 6 (agreeing to 'refrain from complying with the subpoenas until . . . Nygård International ha[s] a reasonable opportunity to be heard' and to provide a schedule for 'Nygård International to assert any applicable third party rights with respect to the requested discovery.'"))

Moreover, as the rightful owners and copyright holders of the Misappropriated Materials, with business trade secret rights, personal privacy rights, and other protectable interests therein, intervention should be granted to allow the Nygård Parties to interpose objections and protect these interests.  *See Bridgeport Guardians, Inc.*, 602 F.3d at 473 (intervenor must show "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest").[6]

**B.     The Nygård Parties Have Standing To Oppose
The Application And Quash The Subpoena**

It is well settled that "parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties" under Section 1782.  *Kuwait Inv. Auth. v. Sarrio S.A. (In re Sarrio, S.A.)*, 119 F.3d 143, 148 (2d Cir. 1997).  The Application is clear that Petitioners intend to use the Misappropriated Materials against Mr. Nygård in the Bahamian Action, to which he is a party.  (Application, dated August 13, 2014, Docket No. 1 ¶¶ 2-4).  This gives Mr. Nygård standing to oppose the Application.  *See In re Request for Int'l Judicial Assistance*, 687 F. Supp. 880, 887 (S.D.N.Y. 1988) (finding standing where targets of foreign action were signatories of documents sought by 1782 application), *rev'd on other grounds*, 936 F.2d 702 (2d Cir. 1991); *see also In re Letter of Request From Crown Prosecution Service*, 870 F.2d 686, 689 (D.C. Cir. 1989) ("one against whom information obtained under section 1782 may be used, has standing to assert that, to his

---

[6]     In the event the Court finds that the Nygård Parties cannot intervene as of right, the Court should permit their intervention under Fed. R. Civ. P. 24(b)(2).  *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) ("The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties'")  (quoting Fed. R. Civ. P. 24(b)(2)).  Petitioners' attempt to invoke the unclean hands doctrine to thwart intervention is baseless.  None of the emails and texts referenced in Petitioners' September 5, 2014 letter to the Court come anywhere near the "truly unconscionable and brazen behavior" required to demonstrate unclean hands.  *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999).  Any communications with Feralio were innocuous, contain no evidence or intention of tempering, and ceased immediately upon the retention of counsel.

detriment, the authority for which the section provides is being abused"); *In re Letter Rogatory from Justice Court, Montreal*, 523 F.2d 562, 564 (6th Cir. 1975) (same).

The Nygård Parties likewise have standing to quash the Subpoena because they claim a "personal right or privilege with regard to the documents sought." *Estate of Ungar v. Palestinian Auth.*, 332 Fed. Appx. 643, 645 (2d Cir. 2009) (citations omitted). The Misappropriated Materials contain over one thousand hours of private and proprietary footage of, among other things: (a) international meetings concerning the Nygård Companies' bio-tech and stem-cell research and business; (b) meetings concerning new retail stores for the Nygård Companies' women's apparel business; (c) Mr. Nygård's medical procedures; and (d) personal social events hosted by Mr. Nygård. (Clifford Decl. ¶ 13.)[7]

Moreover, this footage is subject to strict confidentiality and copyright protections, which make clear that the Nygård Companies, not Feralio, own the Materials and prohibit Feralio from retaining any of the Materials after his termination. (*See*, *infra*, Section III.) That is sufficient to grant the Nygård Companies standing to quash the Subpoena. *See*, *e.g.*, *Mirkin v. Winston Res., LLC*, No. 07-cv-2734 (DF), 2008 U.S. Dist. LEXIS 91492, at *2 (S.D.N.Y. Nov. 10, 2008) ("a plaintiff has standing to quash a subpoena of a non-party where the plaintiff asserts a legitimate privacy interest in the information sought"); *During v. City Univ. of N.Y.*, No. 05-cv-6992 (RLE), 2006 U.S. Dist. LEXIS 10133, at *3-4 (S.D.N.Y. Mar. 9, 2006), *rev'd on other grounds*, 2006 U.S. Dist. LEXIS 53684 (S.D.N.Y. Aug. 1, 2006) (where as here a party contends "that the records defendants seek are private and confidential," the party "claims a personal privacy right

---

[7]   During the September 11 hearing, the Court referred to *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 779 n.20 (S.D.N.Y. 2010) for the proposition that a privilege claim is necessary to quash a subpoena. Contrary to the statement in that footnote, the authorities cited therein stand for the broader proposition that standing exists upon a showing of privilege or a privacy interest. *See*, *e.g.*, 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims *some personal right* or privilege with regard to the documents sought." (emphasis added)).

in the records being sought [and] has standing to object to the issuance of the subpoena");
*Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407, 411 (S.D.N.Y. 2004) (defendant had standing to object to document subpoena because "the generation of these documents resulted from [the third-party's] obligations under its contract with [the defendant, and therefore] are in fact within [the defendant's] control").

Additionally, the Nygård Parties have standing to quash the Subpoena on privilege grounds. While the Nygård Parties have yet to learn the scope of the Misappropriated Materials in Feralio's possession – or what he plans to produce as purportedly responsive to the subpoena – the Nygård Parties believe that Feralio was present during private meetings with the Nygård Parties' attorneys, and as such, the Misappropriated Materials may contain privileged communications with counsel. (Clifford Decl. ¶ 14). Contrary to Petitioners' arguments, even though he was technically an independent contractor and not an employee per se, Feralio's presence during such meetings does not waive this privilege.

Feralio was practically an employee of the Nygård Companies. Given his indisputable confidentiality obligations, participants in meetings where he was present, had reasonable expectations that their communications were not for dissemination. *See Random Ventures, Inc. v. Advanced Armament Corp.*, LLC, 2013 U.S. Dist. LEXIS 20513, at *6-7 (S. D.N.Y. Feb. 5, 2013) (recording that plaintiff former employee made of her interview by outside counsel during investigation did not vitiate defendant corporation's attorney-client privilege, even where plaintiff "obtained permission . . . to record the interview").[8]

---

[8]    Petitioners' cases are inapposite. *See John Doe Co. v. United States*, 79 Fed. Appx. 476 (2d Cir. 2003) (affirming a lack of privilege finding, where the district court determined, after an *in camera* review, that, unlike here, the documents in question "were not intended by the parties to be confidential"); *Pallares v. Kohn (In re Chevron Corp.)*, 650 F.3d 276, 289 n.16 (3d Cir. 2011) (applicants did not even "contend that the [outside, documentary] filmmakers should be regarded as 'agents' of the Ecuadorian plaintiffs so that the attorney-client privilege could attach to communications in their presence"); *Dombrowski v. Bell Atl. Corp.*, 128 F. Supp. 2d 216, 219 (E.D. Pa. 2000) (no privilege in communications between in-house counsel and employees "associated with the

## II.    THE COURT SHOULD DENY THE APPLICATION

Section 1782 "authorizes, but does not require, a federal district court to provide judicial assistance," and leaves the issuance of an order to the "discretion" of the Court. *Intel Corp. v. Advanced Micro Devices, Inc*, 542 U.S. 241, 247, 261 (2004). Significantly, however, the Court's discretion is "not boundless." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004). The Court's discretion is constrained by several factors outlined by the Supreme Court in *Intel*: "First, when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. Second, a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. [Third], a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States. [And fourth], unduly intrusive or burdensome requests may be rejected or trimmed." *In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Group LLC*, No. 14-cv-1801 (NRB), 2014 U.S. Dist. LEXIS 95578, at *9 (S.D.N.Y. July 8, 2014) (quoting *Intel*) (emphasis added). These factors weigh heavily against the Application.

### A.    Petitioners Can Seek The Misappropriated Materials From Feralio In A Bahamian Court

The Supreme Court has recognized that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising

_____

other company"). By contrast, Feralio was, and remains to this day, bound by strict confidentiality provisions in his employment agreements with the Nygård Companies. (Clifford Decl. ¶ 6; Marks Decl., Exs. B & C)

abroad." *Fortress Inv. Group LLC*, 2014 U.S. Dist. LEXIS 95578, at *9 (quoting *Intel*).  Where,

as here, a party has voluntarily agreed to appear in the foreign proceeding, this factor weighs

heavily against the application.  *See In re Application of Leret*, 2014 WL 2803573, at *7 (D.D.C.

June 20, 2014) (affirming denial of 1782 application where respondent was willing "to

voluntarily submit himself to the discovery process of the foreign tribunal for each of the

pending legal disputes").  Feralio has expressly agreed to participate in the Bahamian Actions

where Mr. Nygård is a party.  As such, even assuming that Feralio rightfully possesses the

Misappropriated Materials (he does not), that Feralio's deposition and the Misappropriated

Materials are readily available to the Bahamian courts, should they so order, the Application is

unnecessary and superfluous.

Specifically, Petitioner Bacon, through his property management company, and Feralio

entered into a formal agreement on July 31, 2014 reflecting Feralio's cooperation obligations and

his compensation in connection therewith (the "Compensation Agreement").  (Feralio Decl., Ex.

1 at 1.)  Pursuant to the Compensation Agreement, Feralio agreed to "make himself available to

testify, in person, by deposition or by written statement, under oath, in any aspect (pre-trial, trial

or post-trial) in any domestic or foreign judicial or arbitral proceedings related to or concerning

Nygård and/or Nygård International, or otherwise arising out of or concerning his efforts for

Nygård and/or work for Nygård International."  (*Id.*, § II (A), ¶ 2.)  In exchange, Bacon agreed to

cover Feralio's travel and other expenses, pay for Feralio's legal fees, including for any criminal

prosecution Feralio may face in connection with stealing the Misappropriated Materials, and

indemnify Feralio for any civil liability.  (*Id.*, § II (B), ¶¶ 1, 2.)  In other words, just like they

paid Feralio – a California resident – to travel to New York, Petitioners have agreed to pay for

Feralio to travel to the Bahamas with the Misappropriated Materials or for a deposition, and

Feralio has agreed to comply.  As Feralio has voluntarily agreed to submit to the jurisdiction of the Bahamian courts, Petitioners have no need for Section 1782 relief.  *See Leret*, 2014 WL 2803573, at *7 ("allowing a willing party to make himself available for discovery requests in the country and court where the underlying legal disputes are being litigated was the most effective way to carry out the twin aims of § 1782(a).")

Of course, the Misappropriated Materials do not belong to Feralio and are instead the property of the Nygård Parties.  (*See infra*, Section III.)  Mr. Nygård's availability in the Bahamas also weighs against the Application.  Mr. Nygård is a party to the Judicial Review Proceeding.  (Jenny Afia Declaration ("Afia Decl."), dated August 12, 2014, Docket No. 3, ¶ 61; Application Memo at 10).  Therefore, Mr. Nygård is the proper party and the Bahamas Supreme Court (where the Judicial Review Proceedings are pending) is the proper court from which Petitioners should seek discovery from him.  *See, e.g., Schmitz*, 376 F.3d at 85 (affirming denial of a 1782 application because "[a]lthough technically the respondent in the district court was Cravath, for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation"); *In re Mare Shipping Inc.*, 2013 U.S. Dist. LEXIS 152337, at *14 (S.D.N.Y. Oct. 22, 2013), *aff'd* 2014 U.S. App. LEXIS 14525 (2d Cir. July 30, 2014) ("Considering that, 'for all intents and purposes,' the real subject of the subpoena is Applicants' opponent in the foreign proceeding and the failure of Applicants to seek the requested material through Spanish proof-mechanisms, the Court denies Applicants' motion").[9]

---

[9]    Petitioners posit that the first *Intel* factor requires merely a showing that Feralio is "not a party to any of the Bahamian Actions" and is "located in this Judicial District."  (Application Memo at 23.)  Petitioners are wrong.  *See, e.g., In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) ("The relevant inquiry is whether the evidence is available to the foreign tribunal.")

### B.     The Application Is An End-Run Around
####        The Bahamian Proof-Gathering Limits

Another *Intel* factor to be considered is whether the Application "conceals [an] attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."   *In re Application of Microsoft Corp.*, 428 F. Supp.2d 188, 193 (S.D.N.Y. 2006). The Application constitutes an attempted end-run around to at least some of the Bahamian Actions in violation of this factor.

According to the Application, Petitioners are currently prosecuting seven Bahamian Actions against various entities and individuals, including Mr. Nygård.  (Application Memo at 1).  Specifically, Bacon has commenced at least five actions, in 2012 and 2013, in connection with allegedly defamatory statements purportedly made against him by a number of Bahamian journalists and media personalities (the "Defamation Actions").  (Application Memo at 13-14). The Nygård Parties are not a party to any of the Defamation Actions, but Petitioners speculate that Mr. Nygård is behind the alleged defamatory statements at issue.  (Evans Decl. ¶¶ 13, 18-21; Application Memo at 11-18).  Separately, the Coalition has filed − first in 2013 and then in 2014 − two proceedings that seek judicial review and discovery of the Bahamian government's approval of certain dredging, groyne construction, and other land and beach work performed on or around Mr. Nygård's property in the Bahamas (the "Judicial Review Proceedings"). (Application Memo at 10).  The Judicial Review Proceedings name as respondents the Bahamian Prime Minister and Deputy Prime Minister and various other government officials, as well as Mr. Nygård (in one of these proceedings).  (Evans Decl. ¶¶ 8, 10).

Discovery is unavailable in at least two of the Defamation Actions.  For example, in *Bacon v. Brown and McKinney*, No. 2012/COM/gen/00503 (the "*Brown* Action"), filed on April 13, 2012, Bacon sought a Norwich Pharmacal Order against two defendants, Sherman Brown

and Steve McKinney, for general information to support Bacon's Defamations Actions.  (Evans Decl. ¶ 13.)[10]  The court issued the Norwich Pharmacal Order on June 13, 2012.  (*Id.*)  Bacon has since dismissed the action against McKinney, and is seeking to cross-examine Brown on his submitted affidavits.  (*Id.*)  At this stage, the court has considered all of the evidence that it will entertain.  (*Id.*)  Similarly, in one of the other Defamation Actions, *Bacon v. Jones Communications Limited and Jones*, No. 2012 CLE/gen/00838 (the "*Jones* Action"), Bacon has already obtained a default judgment, and discovery is now closed.  (*Id.* ¶¶ 21-22)   Bacon should not be permitted to seek documents related to the *Brown* and *Jones* Actions in circumvention of these limitations.[11]

Similarly, the Court should reject Petitioners' effort to "end-run around" the Judicial Review Proceedings.  Mr. Nygård is a party to one of the Judicial Review Proceedings, so Petitioners should seek the Misappropriated Materials through an application to the Bahamian court there.  (*See supra*, Section II (A)); *see also Schmitz*, 376 F.3d at 85 ("[a]lthough technically the respondent in the district court was Cravath, for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation").  Thus, at minimum, requests for documents related to the Judicial Review Actions – in paragraph 1, documents related to Hon. Perry the Rt. Hon. Perry Christie, the Hon. Philip E. Brave Davis, the Hon. Glenys Hanna-Martyn, the Town Planning Committee, and Keod Smith, each of whom is a respondent to the Judicial Review Proceedings; and paragraphs 2 through 5 − are improperly part of the Application.  (*See* Snyder Decl., Ex. A at III ¶¶ 1-5).

---

[10]   A Norwich Pharmacal Order requires a respondent to disclose certain documents or information to the applicant.  The respondent must be involved in a wrongdoing, whether innocently or not, and is unlikely to be a party to the potential proceedings.  The order can be obtained pre-action, during the course of an action, and post-judgment and is commonly used to identify the proper defendant to an action or to obtain.

[11]   Specifically, the Subpoena requests for documents contained in, among others, paragraph 1 related to Jones Communications Limited, Wendell Jones, Sherman Brown, and Steve McKinney should not be actionable.  (*See* Orin Snyder Declaration ("Snyder Decl."), dated August 12, 2014, Docket No. 7, Ex. A at III ¶ 1.)

### C.   The Application Is Unduly Intrusive

"[T]he fourth *Intel* factor instructs courts to consider whether the request is 'unduly intrusive or burdensome.'"  *In re Kreke Immobilien KG*, No. 13-mc-110 (NRB), 2013 U.S. Dist. LEXIS 160283, *20-21 (S.D.N.Y. 2013) (quoting *Intel*, 542 U.S. at 265).  At issue here are "over one thousand hours of video recordings of Nygård[,]" that span nearly three years of the Nygård Parties' business and personal meetings and events.  (Application Memo at 1).  It is beyond dispute that a request for such massive amounts of privileged and confidential information is intrusive.[12]

### D.   The Application Is An Impermissible Fishing Expedition Brought To Harass The Nygård Parties

In addition to the *Intel* factors, "if the judge suspects that the § 1782 discovery request is a fishing expedition or a vehicle for harassment, the district court should deny the request." *Metallgesellschaft v. Hodapp (In re An Order Permitting Metallgesellschaft Ag to Take Discovery)*, 121 F.3d 77, 79 (2d Cir. 1997) (quotations and alterations omitted); *In re Application of Apotex Inc. for Order to Obtain Discovery for Use in Action Pending Before the Federal Court in Canada (Case No. T-161-07)*, No. M12-160 (BSJ), 2008 U.S. Dist. LEXIS 109420, at *6 (S.D.N.Y. Dec. 30, 2008) ("if the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation").

---

[12]   Although the Nygård Parties have no reliable knowledge of the scope or volume of the Misappropriated Materials, we did receive this afternoon Feralio's counsel's first report to the Court on Feralio's review effort.  In the submission, Feralio's counsel reports on marking over one third of the videos he has reviewed as responsive and estimates that the review process will take several months.  (*See* Letter, dated September 18, 2014, Docket No. 40.) It is plain that the burden on the Nygård Parties to review and assert rights or objections as to the Misappropriated Materials would be very high.

12

### 1.    The Application Is A Fishing Expedition

Despite maintaining at least six Bahamian Actions for over a year, the best argument

Petitioners can muster is that "Nygård's precise involvement" is "still being uncovered."

(Application Memo at 3.)  Notwithstanding Feralio's active participation in the Application,

Petitioners' description of the evidence they think they will find in the Misappropriated Materials

is rank speculation.  For example, Petitioners claim that Feralio "was at Mr. Nygård's side and

freely recording him for hours each day" during the publication by third parties of allegedly

defamatory statements.  (Application Memo at 18).  Similarly, Petitioners also make the specious

claim that the presence of a Bahamian Minister of Labor at Mr. Nygård's property must mean

that Mr. Nygård somehow manipulated government officials.  (Application Memo at 19).  Yet

Petitioners can draw no connection between this supposed video footage and the claims they

have brought in the Bahamas.[13]

Petitioners are seeking thousands of hours of personal data in hopes of uncovering some

irrelevant tidbit that Petitioners can feed to the tabloids, as they have at every turn of this

proceeding.  That is not the aim of Section 1782.  *Fortress*, 2014 U.S. Dist. LEXIS 95578, at

*19-20 (denying application due, in part, to "concern[] that this action is more akin to a fishing

expedition").

### 2.    The Application Is Nothing More Than
### A Vehicle To Harass The Nygård Parties

The Application is rife with inappropriate yet wholly irrelevant attacks on Mr. Nygård

and his character.  Indeed, Petitioners dedicate an entire section in their Memorandum and pages

upon pages in the Afia Declaration to enumerate a voluminous array of scandalous allegations

---

[13]    Tellingly, in negotiating the protective order for this proceeding, Petitioners' counsel has taken the position that the use of material produced in this proceeding should be permitted in future, not-yet-filed, related cases.  That Petitioners improperly seek to tie the discovery sought here to speculative future litigation reflects the improper exploratory nature of the Application.

that bear zero relevance to the Bahamian Actions or the Application.  (Application Memo at 3; Afia Decl. ¶ 8)  These and other attacks reveal the true basis for the Application – to tarnish Mr. Nygård's integrity in the United States.  Petitioners' plainly improper motives also strongly militate against granting the Application.

In sum, the discretionary factors weigh heavily against the Application.

## III.   THE COURT SHOULD NOT FACILITATE DISCOVERY OF MISAPPROPRIATED MATERIALS

Section 1782(a) mandates that discovery under the statute be produced "in accordance" with the Federal Rules of Civil Procedure, which therefore guide the instant proceeding.  28 U.S.C. § 1782 (2014); *see also Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) ("any and all other limitations upon discovery that would be available under Fed.R.Civ.P. 26 (particularly subparagraphs (b) and (c)), pertaining both to privileged and trial preparation matters and to protective orders, are also available under section 1782(a) as the district court may provide.")  As such, this Court has the power "to remedy unfair litigation practices and preserve judicial integrity is broad[] in scope" in this proceeding.  *Lahr v. Fulbright & Jaworski, L.L.P.*, No. 94-cv-981, 1996 WL 34393321, at *3 (N.D. Tex. July 10, 1996); *Ashman v. Solectron Corp.*, No. 08-cv-1430, 2008 WL 5071101, at *2 (N.D. Cal. Dec. 1, 2008) (sanctions available "[w]hen a party wrongfully obtains documents outside the normal discovery process" includes "the compelled return of all documents").

Here, allowing Petitioners to obtain any of the Misappropriated Materials would pose "a threat to the integrity of [the] judicial proceeding and the administration of justice" and "reward malfeasant conduct and encourage the use of subversive tactics."  *Lahr*, 1996 WL 34393321, at *3 (granting protective order to restrain discovery of materials improperly obtained by former employee); *see also Herrera v. Clipper Grp., L.P.*, No. 97-cv-560 (SAS), 1998 U.S. Dist. LEXIS

14

6454, at *5 (S.D.N.Y. May 5, 1998) ("The discovery process is not meant to be supplemented by the unlawful conversion of an adversary's proprietary information").  As explained below, all of the Misappropriated Materials are subject to strict ownership, confidentiality, and copyright protections.  There is no legitimate dispute that the Misappropriated Materials are improperly possessed by Feralio belong and to the Nygård Companies.

Feralio's agreement with the Nygård Companies was memorialized in an Independent Contractor Agreement, dated November 21, 2011 (the "2011 Agreement"). (Marks Decl., Ex. B) The 2011 Agreement provides in pertinent part that:

- Feralio agreed to "assign all of [his] rights" to the recordings that he would make and any resulting work product to Nygård, and that such recordings and work product "belong[ed] exclusively to Nygård."  (*Id*., Schedule A, § 4.3).

- Feralio agreed that any information concerning "the business or the affairs" of the Nygård Companies (and its directors, officers, and employees) belonged to Nygård, and was to remain confidential.  (*Id*., Schedule A, § 1.1).

- Feralio agreed that "Confidential Information" covered, among other things, "methods of doing business; trade and design secrets;" "business and market plans;" "market information and sales or customer lists;" and "records and information pertaining to employees, directors or officers, including any personal information relating to employees, directors and officers[.]" (*Id*., Schedule A, § 1.2).

- Feralio acknowledged that he would be filming the personal events and affairs of Mr. Nygård and others, and agreed to keep "confidential, without exception, all information relating to such events, including but not limited to, lists of persons present at such events and any information relating to such persons, including any conversations which [he] may have had with [individuals attending such events] or statements which [he] overheard." (*Id*., Schedule A, § 1.3).

- Feralio agreed to "not to discuss or disclose any information relating to the personal or professional lives and/or dealings of any of Nygård's officers and/or directors, and employees during your employment and after the termination thereof, for any reason." (*Id*., Schedule A, § 1.3).

15

The 2011 Agreement was effective as of September 10, 2011.  It had an initial term of one year ending on September 9, 2012, but automatically renewed for additional one-year terms until terminated by written notice from either party.  (*Id*., § 2.)

In 2013, the parties renewed their agreement in another Independent Contractor Agreement, dated February 15, 2013 and retroactive to September 10, 2012 (the "2013 Agreement", and together with the 2011 Agreement, the "Contractor Agreements").  (Marks Decl. Ex. C).  The material terms of the 2013 Agreement are effectively the same as the 2011 Agreement, except that the 2013 Agreement does not have an automatic renewal provision, and Feralio's compensation was increased by 50% per month from $4,000 to $6,000.[14]  (*Compare id*., Schedule B, §§ 1, 2, 3 *et seq*., 4.2 *with* Marks Decl. Schedule A, §§ 1, 2, 3).

As contemplated by the Contractor Agreements, Feralio and the Nygård Companies entered into a further agreement, dated August 13, 2013 (the "Assignment Agreement"). (Marks Decl., Ex. D).  In the Assignment Agreement, Feralio (i) agreed that "all videography, photography, recording, burning DVDs, compressing video data, motion pictures, digital recordings, and other audio visual words created by [Feralio] during the course of [his] performance under the services contract with [the Nygård Companies] (the 'Works')" were "Works Made for Hire" and (ii) "irrevocably assign[ed], transfer[ed], grant[ed], and convey[ed] exclusively to [the Nygård Companies] all of the right, title, and interest of every kind whatsoever throughout the entire world in and to the Works, including, without limitation, the

---

[14]     Petitioners acknowledge the existence of the Contractor Agreements, and their confidentiality provisions, and even attach copies of the agreements to one of the declarations supporting the Application.  Incredibly, petitioners contend that the confidentiality provisions in the Contractor Agreements cover only the business of Nygård International and Nygård Inc.  Of course, as can be seen from the provisions discussed above, the scope of those confidentiality and non-disclosure provisions is much broader and plainly covers information about the personal affairs of Mr. Nygård and others.

copyrights, and all renewals and extensions thereof, in and to the Works." (Marks Decl., Ex. D at 1 ¶ 1).

The Contractor Agreements and the Assignment Agreement unambiguously give the Nygård Companies exclusive property rights over the Misappropriated Materials. Specifically, the Contractor Agreements state that Feralio's entire work product "created or obtained" during his engagement with the Nygård Companies "belong exclusively to Nygård." (Marks Decl., Ex. B, Schedule A, § 4.3; Ex. C, Schedule B, § 1.5). And, the Assignment Agreement's work-for-hire provisions provide that Feralio's entire work product upon its creation vests immediately to the Nygård Companies. (Marks Decl., Ex. D at 1). *See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012) ("If a work is made for hire, 'the employer or other person for whom the work was prepared is considered the author' and owns the copyright 'unless the parties have expressly agreed otherwise in a written instrument signed by them'") (internal citations omitted). Thus, the Nygård Companies have exclusive property rights to the Misappropriated Materials. *See Xerox Corp. v. A&M Printing*, No. 12-cv-043, 2013 U.S. Dist. LEXIS 74179, at *15-16 (C.D. Cal. May 20, 2013) (finding that plaintiff alleged a claim for replevin where, as here, a contract established plaintiff's right to possession) (applying California law); *see also Brocade Communs. Sys. v. A10 Networks, Inc.*, No. 10-cv-3428, 2011 U.S. Dist. LEXIS 30227, at *28-29 n.4 (N.D. Cal. Mar. 23, 2011) ("If the defendants used inventions they conceived at Foundry for purposes outside of their employment at Foundry, such action would thwart the  assignment clause and at least potentially constitute a breach") (applying California law).[15] Indeed, any property interest that Feralio could possibly claim to the Misappropriated

---

[15]    *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 72 Cal. Rptr. 3d 210 (2008), cited by Petitioners, is inapplicable. There, the court found that the confidentiality provisions in the Nygård Companies' employment agreement did not prevent an employee from discussing personal work experiences. *Id.* Here, by contrast, Petitioners seek the Misappropriated Materials, not Feralio's testimony regarding his working conditions.

Materials "is not readily distinguishable from a pickpocket's interest in a stranger's purse." *Pillsbury, Madison & Sutro Schectman*, 55 Cal. App. 4th 1279, 1288 (1st Dist. 1997), *review denied* 1997 Cal. LEXIS 6197 (Oct. 1, 1997).

By continuing to possess and failing to return the Misappropriated Materials to the Nygård Parties, as well as offering to disclose the Misappropriated Materials to Petitioners (having already disclosed them in part), Feralio is in breach of the Contractor and Assignment Agreements and is subject to various causes of action. *See Robinson v. Louie (In re Louie)*, No. 97-bk-30448, 1997 Bankr. LEXIS 1898, at *9-10 (Bankr. N.D. Cal. Sept. 2, 1997) ("Louie's assertion of dominion over the assets in which Robinson claims an interest would, prima facie, constitute an act of conversion"); *Pillsbury, Madison & Sutro*, 55 Cal. App. 4th at 1286-88 ("mere ownership" of former employer's documents deemed to be wrongful possession by former employee); *Brocade Commc'ns Sys.*, 2011 U.S. Dist. LEXIS 30227, at *28-29 n.4 (former employee's possession of employer's property could give rise to a claim for breach of assignment clause); *Hunter Consulting v. Beas*, No. 12-cv-1947, 2012 U.S. Dist. LEXIS 176317, at *9 (C.D. Cal. Dec. 10, 2012) (acquisition of former employer's trade secrets was found to be "improper"); *see also* 1-20 CA Antitrust and Unfair Competition Law § 20.04 ("Even where the employer's property or information is not a trade secret, the employee nevertheless may be held liable on various common law theories for misappropriating the property").[16]

---

[16]    The cases Petitioners cite to evade Feralio's obligations under the Contractor Agreements are inapplicable. *See McGrane v. Reader's Digest Ass'n, Inc.*, 822 F. Supp. 1044 (S.D.N.Y. 1993), *supplemented by*, 1993 WL 525127 (S.D.N.Y. Dec. 13, 1993) (Plaintiff sought damages for losing job as fraud investigator after raising issues of financial wrongdoing); *Chambers v. Capital Cities/ABC*, 159 F.R.D. 441 (S.D.N.Y. 1995) (holding that attorneys are allowed to interview opposing parties' former employees ex parte, but cannot inform them that they can disregard agreements with former employer not to disclose information); *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127 (N.D. Cal. 2002) (holding that confidentiality obligations do not prevent employees and former employees from disclosing non-trade secret and non-privileged information regarding securities fraud, because public interest is at stake where there are violations of federal law); *In Re Application of Eli Lilly & Co.*, No. 09-mc-296, 2010 WL 2509133 (D. Conn. June 15, 2010) (party from which discovery was sought supplied the chemical compound the patent of which was at issue); *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010) (granting

Inasmuch as it is plain that Feralio's continued possession of the Misappropriated Materials is wrongful, Petitioners' subpoena should not be allowed to serve as a vehicle for their discovery.

## IV.   RESOLUTION OF THE CONTRACTOR AND ASSIGNMENT AGREEMENTS SHOULD BE SETTLED IN CALIFORNIA

The above recitation of the contractual terms and the fact that Feralio has no possessory right to the Misappropriated Materials should be undisputed.  However, to the extent that Feralio's possessory right is in dispute, that dispute should be resolved by the California state court before which the Nygård Companies' action against Feralio has been filed (the "California Action").  (*See* Marks Decl. Ex. A, (Complaint).)

Each of the Agreements provide for exclusive jurisdiction for any related dispute between Feralio and the Nygård Parties to be adjudicated in the Superior Court of California.  (Marks Decl., Ex. B ¶ 10, Ex. C ¶ 11, Ex. D ¶ 7.)  On September 17, an action was commenced in Los Angeles to determine, among other things, whether Feralio has a possessory interest with respect to the Misappropriated Materials.  (Marks Decl., Ex. A.)  Inasmuch as Feralio and the Nygård Parties contracted for the California Superior Court to adjudicate any dispute relating to their possessory right of the Misappropriated Materials − and Petitioners lack standing as to that issue − this Court should quash the Subpoena in deference to the California court's jurisdiction over this issue.[17]

_____

discovery of confidential materials upon showing, not made by Petitioners here, of "substantial need"); *In re Fed'n Internationale de Basketball, for a Subpoena Pursuant to 28 U.S.C. 1782*, 117 F. Supp. 2d 403 (S.D.N.Y. 2000) (granting discovery of confidential drug test result where player claimed that he had not failed a drug test).

[17]    Alternatively, the Court may consider staying the Application pending a determination of the California court. "The discretion to stay an action is inherent to a district court's power to control its docket."  *Faunus Grp. Int'l, Inc. v. Ramsoondar*, No. 13-cv-6927, 2014 U.S. Dist. LEXIS 67838, at *4 (S.D.N.Y. May 16, 2014).  "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.  This rule . . . does not require that the issues in such proceedings are necessarily controlling of the action before the court."  *Goldstein v. Time Warner New York City Cable Grp.*, 3 F. Supp. 2d 423, 437-438 (S.D.N.Y. 1998).  Given the several month endeavor

*     *     *

Pursuant to the Court's ruling during the September 11, 2014 conference, the Nygård Parties do not waive and expressly reserve their right to contest the "merits" of the Application, pending, among other things, receipt of copies of purportedly responsive Misappropriated Materials.

## CONCLUSION

For the foregoing reasons, the Court should deny the Application and quash the subpoena.

Dated: September 18, 2014
New York, New York

Respectfully submitted,

KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP


By:   /s/ Aaron H. Marks
    Marc E. Kasowitz (mkasowitz@kasowitz.com)
    Aaron H. Marks (amarks@kasowitz.com)
    Kenneth R. David (kdavid@kasowitz.com)

1633 Broadway
New York, NY  10019
(212) 506-1700

*Attorneys for Nygård International, Nygård Inc.,
and Peter Nygård*

---

that will be required for both Feralio and the Nygård Parties to review the Misappropriated Materials, it would plainly be more efficient to have a determination as to whether Feralio rightfully is in possession of the Misappropriated Materials.