UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                   :

In re Application of THE COALITION TO    :
PROTECT CLIFTON BAY and LOUIS       :
BACON for an Order Pursuant to 28 U.S.C.  :  No. 14 MC 258
Section 1782 to Conduct Discovery for Use in  :
Foreign Proceedings.                     :
                                   :
---------------------------------------------------------x


### SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF 28 U.S.C. § 1782 APPLICATION AND IN OPPOSITION TO MOTION TO INTERVENE AND TO QUASH SUBPOENAS

GIBSON, DUNN & CRUTCHER LLP
Orin Snyder
Avi Weitzman
Mary Beth Maloney
Ilissa Samplin
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................... 1

II.   JUDICIAL INTEGRITY FAVORS DENIAL OF BOTH MOTIONS ............................ 3

III.  THE MOTION TO INTERVENE SHOULD BE DENIED ............................................. 5

IV.   THE MOTION TO QUASH SHOULD BE DENIED ....................................................... 8

      A.    The Statutory and Discretionary Factors Favor Discovery ................................... 8

      B.    No Cognizable Attorney-Client Privilege Bars the Discovery ............................ 13

      C.    No Purported Interest in the Evidence Justifies Quashing the Subpoenas .......... 14

      D.    The Forum Selection Clauses in the Contracts Are Irrelevant ............................ 17

V.    CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abramson v. Pennwood Inv. Corp.*,
　392 F.2d 759 (2d Cir. 1968) ........................................................................ 5

*Application of Malev Hungarian Airlines*,
　964 F.2d 97 (2d Cir. 1992) ......................................................................... 10

*Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*,
　231 F.R.D. 426 (M.D. Fla. 2005) ............................................................... 12

*Beckman Indus., Inc. v. Int'l Ins.*,
　966 F.2d 470 (9th Cir. 1992) ........................................................................ 7

*Berg v. MTC Elec. Tech. Co.*,
　61 Cal. App. 4th 349 (1998) ....................................................................... 18

*Chambers v. Capital Cities/ABC*,
　159 F.R.D. 441 (S.D.N.Y. 1995) ............................................................... 16

*Chevron Corp. v. Berlinger*,
　629 F.3d 297 (2d Cir. 2011) .................................................................. 7, 14

*Chevron Corp. v. Donziger*,
　2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ........................................... 12

*Chevron Corp. v. Donziger*,
　296 F.R.D. 168 (S.D.N.Y. 2013) ............................................................... 13

*Diamond v. Charles*,
　476 U.S. 54 (1986) ....................................................................................... 6

*Estate of Ungar v. Palestinian Auth.*,
　332 Fed. Appx. 643 (2d Cir. 2009) .............................................................. 7

*Floyd v. City of N.Y.*,
　--F.R.D.--, 2014 WL 3765729 (S.D.N.Y. July 30, 2014) ............................. 6

*Gould v. United States*,
　2012 WL 75425 (S.D.N.Y. Jan. 4, 2012) ..................................................... 5

*Gruss v. Zwirn*,
　2013 WL 3481350 (S.D.N.Y. July 10, 2013) ............................................. 14

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
　633 F.3d 591 (7th Cir. 2011) ...................................................................... 11

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ................................................................................ 12

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
  817 F.2d 75 (9th Cir. 1987) .................................................................. 18

*In Matter of Application of Leret*,
  2014 WL 2803573 (D.D.C. June 20, 2014) ............................................ 9

*In re Application of Noboa*,
  1995 WL 581713 (S.D.N.Y. Oct. 4, 1995) ............................................ 19

*In re Bank of Am. Corp. Secs.*,
  2012 WL 1674299 (S.D.N.Y. May 14, 2012) .......................................... 5

*In re Bayer AG*,
  146 F.3d 188 (3d Cir.1998) ................................................................... 19

*In re Chevron Corp.*,
  633 F.3d 153 (3d Cir. 2011) ................................................................... 9

*In re Grand Jury Matter*,
  770 F.2d 36 (3d Cir. 1985) ..................................................................... 8

*In re Grand Jury Subpoenas*,
  318 F.3d 379 (2d Cir. 2003) ................................................................. 13

*In re Gushlak*,
  2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) ...................................... 12

*In re JDS Uniphase Corp. Sec. Litig.*,
  238 F. Supp. 2d 1127 (N.D. Cal. 2002) ............................................... 16

*In re Letters Rogatory*,
  144 F.R.D. 272 (E.D. Pa. 1992) ............................................................ 14

*In re Microsoft Corp.*,
  428 F. Supp. 2d 188 (S.D.N.Y. 2006) .................................................... 8

*In re Oxycontin Antitrust Litig.*,
  2013 WL 1701009 (S.D.N.Y. Apr. 15, 2013) ...................................... 16

*In re Strand Inv. Ltd.*,
  2009 WL 2225536 (S.D. Fla. July 24, 2009) ..................................... 8, 11

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Subpoena Duces Tecum Served on Bell Commc'ns Research, Inc.*,
    1997 WL 10919 (S.D.N.Y. Jan. 13, 1997) .................................................................. 16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ................................................................................ 2, 7, 8, 11

*Jackson v. Johnson*,
    985 F. Supp. 422 (S.D.N.Y. 1997) ......................................................................... 19

*Langford v. Chrysler Motors Corp.*,
    513 F.2d 1121 (2d Cir. 1975) .................................................................................. 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................... 5

*Maryland Cas. Co. v. W.R. Grace & Co.*,
    1994 WL 419787 (S.D.N.Y. Aug. 10, 1994) ............................................................ 7

*McKevitt v. Pallasch*,
    339 F.3d 530 (7th Cir. 2003) ................................................................................ 14

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
    2013 WL 238176 (S.D.N.Y. Jan. 13, 2013) .......................................................... 13

*N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*,
    69 F.3d 34 (9th Cir. 1995) .................................................................................... 18

*Niester v. Moore*,
    2009 WL 2179356 (E.D. Pa. July 22, 2009) ......................................................... 16

*Nygård, Inc. v. Uusi-Kerttula*,
    72 Cal. Rptr. 3d 210 (Cal. Ct. App. 2008) .............................................................. 9

*Old N. State Brewing Co. v. Newlands Serv. Inc.*,
    1998 Carswell BC 2294 ¶ 36 (B.C. Ct. App.) ....................................................... 18

*On Davis v. Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001) ................................................................................. 17

*Online Policy Grp. v. Diebold, Inc.*,
    337 F. Supp. 2d 1195 (N.D. Cal. 2004) ................................................................ 17

*R.I. Fed'n of Teachers v. Norberg*,
    630 F.2d 850 (1st Cir. 1980) ................................................................................... 5

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*SEC v. Bear, Stearns & Co.*,
   2003 WL 22000340 (S.D.N.Y. Aug. 25, 2003) ................................................... 5

*Simmons v. Fervent Elec. Corp.*,
   2014 WL 4285762 (E.D.N.Y. Aug. 29, 2014) .................................................. 20

*Simon v. Foley*,
   2011 WL 4954790 (W.D.N.Y. Oct. 18, 2011) ................................................. 18

*Twentieth Century Music Corp. v. Aiken*,
   422 U.S. 151 (1975) ......................................................................................... 17

*United States v. L&M 93rd St. LLC*,
   2011 WL 1346994 (S.D.N.Y. Apr. 5, 2011) ..................................................... 5

*United States v. Stein*,
   488 F. Supp. 2d 350 (S.D.N.Y. 2007) ........................................................... 16

## Statutes

28 U.S.C. § 1782 ...................................................................................................... 1, 19

28 U.S.C. § 1782(a) ...................................................................................................... 7

## Other Authorities

Dictionary of Can. Law 93 (3d ed. 2004) ................................................................. 18

Fed. R. Civ. Proc. 26 advisory committee notes (2007) .......................................... 17

Kai Falkenberg, *Peter Nygård Answers to No One*, Forbes, Nov. 18, 2010 ................ 9

## Rules

Fed. R. Civ. P. 24(c) ..................................................................................................... 5

Fed. R. Civ. P. 26(b)(1) ............................................................................................... 12

Fed. R. Civ. P. 45(d)(3)(A-B) ..................................................................................... 20

Fed. R. Evid. 602 ........................................................................................................ 13

## <u>TABLE OF ABBREVIATIONS AND DEFINED TERMS</u>

The following abbreviations and defined terms are used in this Supplemental Memorandum of Law:

| | |
|---|---|
| "1782 Application" | Petitioners' Application and Petition for an Order pursuant to 28 U.S.C. § 1782 |
| "Adams Decl." | Declaration of Robert K. Adams in Support of 1782 Application |
| "Afia Decl." | Declaration of Jenny Afia in Support of Petitioners' 1782 Application |
| "California Action" | *Nygård Int'l P'ship v. Feralio et al.*, BC558003 (Cal. Super. Ct.) |
| "Clifford Decl." | Declaration of Daane Clifford In Support of the Motion to Intervene and Opposition to 1782 Application and To Quash Subpoena |
| "Evans Decl." | Declaration of Thomas A.E. Evans In Support of the Motion to Intervene and Opposition 1782 Application and To Quash Subpoena |
| "Feralio Decl." | Declaration of Steven J. Feralio in Support of 1782 Application |
| "Feralio Supp. Decl." | Supplemental Declaration of Steven Feralio in Support of 1782 Application |
| "Marks Decl." | Declaration of Aaron H. Marks In Support of the Motion to Intervene and Opposition to 1782 Application and To Quash Subpoena |
| "Mot." | Nygård Parties' Memorandum of Law in Support of the Motion to Intervene and Opposition to 1782 Application and to Quash Subpoenas |
| "Nygård Companies" | Nygård International Partnership, Nygård Inc. |
| "Nygård Parties" | Nygård International Partnership, Nygård Inc., and Peter Nygård |
| "Palladino Decl." | Declaration of Jack Palladino in Support of 1782 Application |
| "Petitioners" | The Coalition to Protect Clifton Bay and Louis Bacon |
| "Pet. Mem." | Petitioners' Memorandum of Law in Support of Application and Petition for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings |
| "Save The Bays" | The Coalition to Protect Clifton Bay |
| "Smear Campaign" | The smear campaign against Louis Bacon discussed in Pet. Mem. 11–13 |
| "Smith Decl." | Declaration of Frederick R. Smith, Q.C. in Support of 1782 Application |
| "Snyder Decl." | Declaration of Orin Snyder in Support of 1782 Application |
| "Weitzman Decl." | Declaration of Avi Weitzman in Support of 1782 Application |

Petitioners hereby oppose the motions to intervene and to quash filed by the Nygård Parties.  Petitioners also reply to the Nygård Parties' opposition to Petitioners' 1782 Application.

## I.  INTRODUCTION

Even before their first submission to this Court, the Nygård Parties have pursued a singular goal: to interfere with this Court's adjudication of Petitioners' 1782 Application.  Within hours after the filing of this Application, Peter Nygård enlisted proxies to intimidate the subpoenaed witness, Steven J. Feralio, to tamper with his testimony, and to prevent his compliance with the court-issued subpoenas.  This Court held a hearing on September 11, 2014 at which it ordered briefing on issues relevant to the 1782 Application.  Days later, in a brazen attempt to interfere with this Court's jurisdiction, the Nygård Parties filed a preemptive "emergency" lawsuit in the Los Angeles Superior Court.  The following day, they sought a temporary restraining order to, among other things, bar disclosure of information Mr. Feralio obtained in connection with his role working for the Nygård Companies, a matter squarely before this Court.  The California court denied their motion that morning, refusing even to grant an order to show cause for the issuance of a preliminary injunction.  That same day, the Nygård Parties filed their moving brief in this Court.  They again argue that this Court should not consider the 1782 Application in deference to courts in California and the Bahamas—an obvious gambit to suppress the evidence for all time.

The 1782 Application seeks highly relevant and valuable evidence for use in foreign proceedings brought to advance the societal and environmental rights of the Bahamian people and to finally end the unprecedented four-year Smear Campaign against Mr. Bacon.  The subpoenaed video footage and testimony are critical evidence in the pursuit of these causes.  The Nygård Parties attempt to trivialize this proceeding by ignoring the merits of the underlying Bahamian lawsuits.  But tellingly absent from their brief is any denial that Mr. Nygård was

involved in the Smear Campaign or the unlawful destruction of the Bahamian environment.  The Nygård Parties also do not deny that the subpoenaed video footage will reveal these bad acts.

Although the Nygård Parties try to distract the Court with irrelevant arguments and misleading facts, Petitioners will follow the proper 1782 framework.  As an initial matter, in light of the Nygård Parties' attempts to obstruct justice, intimidate a witness, and misrepresent the facts, Petitioners request that this Court use its inherent authority to protect the integrity of the judicial system and sanction the Nygård Parties by denying their motions to intervene and to quash.  Petitioners also address the threshold issues of whether the Nygård Parties have properly sought to intervene (they have not) and whether they have demonstrated standing to oppose the 1782 Application (they have not).  As explained below, however, the Court need not decide these threshold issues because even considering the Nygård Parties' arguments on the merits, their motion to quash the subpoenas should be denied.

Because the Nygård Parties have moved to quash the subpoenas and have opposed the 1782 Application, Petitioners also address the merits and explain why discovery is appropriate under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).[1]  Both the statutory factors and the discretionary factors weigh decisively in Petitioners' favor.  And because the Nygård Parties fail to identify a valid privilege or interest that would justify quashing Petitioners' lawful, textbook 1782 Application, the Nygård Parties' motions to intervene and to quash should be denied, and the 1782 Application should be granted.

---

[1]  This Court should also reject the Nygård Parties' efforts to stall further by allowing them to re-brief the merits after they review the video footage.  *See* Mot. at 20.  They have stated no grounds for a second bite at the 1782 apple, and this Court already rejected a similar argument during the September 11 hearing.  Hrg. Tr. ("We are not going to delay your merits briefing for that production.  It may be of assistance to you . . . but we are going to move forward with the briefing.").

## II.  JUDICIAL INTEGRITY FAVORS DENIAL OF BOTH MOTIONS

The Nygård Parties and their affiliates have attempted to obstruct justice and tamper with a witness since the day the 1782 Application was filed one month ago.  This Court should not countenance such conduct.  *Hazel-Atlas Glass Co. v. Hartford-Empire Co*, 322 U.S. 238, 246 (1944) ("[T]ampering with the administration of justice . . . is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.").

Shortly after the filing of this 1782 Application, Mr. Nygård repeatedly and frantically attempted to locate and communicate with Mr. Feralio—a represented party—through intermediaries, in order to intimidate him and obstruct his truthful testimony and production of the subpoenaed video footage.  Feralio Supp. Decl. ¶¶ 25–29; Pet. Letter to the Court, Sept. 5, 2014; *see, e.g*, Feralio Supp. Decl. ¶ 27 (Mr. Nygård advised Mr. Feralio's Former Roommate "we need to find [Mr. Feralio] before he ruins the rest of his life" and "we need to make him turn on Bacon").  ██████████████████████████████████████████████

██████████████████████████████████████████████████████.  It is also consistent with the Nygård Parties' continuing misrepresentations to this Court and the California court, including that Petitioners are "feed[ing]" information to the "tabloids," Mot. at 13, which is patently false, Pet. Letter to the Court, Sept. 19, 2014, and their failure to timely apprise this Court of the action they filed against Mr. Feralio in California to evade this Court's jurisdiction over the subpoenaed videos.  *Id.*

Mr. Nygård's efforts to secretly contact Mr. Feralio—who had publicly testified that he was in fear of Mr. Nygård—requires *at the very least* denying the "extraordinary relief" the Nygård Parties seek here.  *U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*, -- F.R.D. --, 2014 WL 2767592, at *4 (D.D.C. June 19, 2014) (party seeking to quash subpoena must show

"extraordinary circumstances"). Where, as here, a third party has attempted to unilaterally interfere with a subpoena, that party should not be afforded access to the tribunal to move to quash that same subpoena. *See Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118–19 (1st Cir. 1989) (courts "possess the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court"); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 49–50 (1991) (court had the inherent power to sanction beyond Rule 11 because the conduct "evidenced bad faith and an attempt to perpetrate a fraud on the court").

Alternatively, this Court should—pursuant to its "duty" and "power to unearth … fraud"—hold a hearing so that it may assess the extent of Mr. Nygård's obstruction, including by hearing the live testimony of (at least) Mr. Nygård and Mr. Feralio. *Univ. Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946) (court has power to conduct a "proper hearing" and determine whether "fraud has been practiced upon it, or that the very temple of justice has been defiled"); *Hazel-Atlas Glass Co.*, 322 U.S. at 246 (court had "not only the power, but the duty" to investigate and set aside judgment where "plaintiff's conduct amounted to 'tampering with the administration of justice' and 'a wrong against institutions set up to protect the public'" (citation omitted)); *In re E.I. DuPont De Nemours & Co. Benlate Litig.*, 99 F.3d 363, 367 (11th Cir. 1996) ("every district court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud").[2]

---

[2] Mr. Feralio's Former Roommate informed him that he received many emails from Peter Nygård regarding Nygård's efforts to locate Mr. Feralio and make him "turn on Bacon," in addition to the two emails that were shown and read to Mr. Feralio (but which we do not have). We have conferred with counsel for the Former Roommate and counsel has authorized us to represent to this Court that they will produce correspondence between Nygård and the Former Roommate, but only upon the court's directive. We respectfully request that the court so direct. *See Univ. Oil Prods. Co.*, 328 U.S. at 580 (court has inherent authority to "bring before it by appropriate means" evidence to uncover fraud).

### III.  THE MOTION TO INTERVENE SHOULD BE DENIED

The Nygård Parties' motion to intervene should be denied for the independent reason that they have failed to meet the procedural requirements of Federal Rule of Civil Procedure 24, which mandates that parties seeking to intervene file a pleading with their motion (such as a complaint in intervention) setting "out the claim or defense for which intervention is sought."[3] Because the Nygård Parties failed to include any such pleading, it is impossible to discern *what* interests are being claimed by *which parties*.[4]  This alone is "fatal" to the Nygård Parties' motion, which should be summarily denied.  *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 761 (2d Cir. 1968) (affirming denial of motion to intervene with prejudice because appellant's failure to file pleading along with motion papers as required by Rule 24(c) was fatal to application, and amendment "would be futile"); *United States v. L&M 93rd St. LLC*, 2011 WL 1346994, at *2 (S.D.N.Y. Apr. 5, 2011) ("[party's] failure to submit a pleading … alone warrants denial of the motion to intervene under both Rule 24(a) and (b)").[5]

Whether Rule 24 is satisfied is a separate threshold question from whether a party has standing to object to the 1782 Application.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (the "burden of establishing" standing is subject to proof at each "stage[] of the litigation").  Notwithstanding this Court's directive that the Nygård Parties "show" the Court

---

[3]  Fed. R. Civ. P. 24(c); *see also* 25 Fed. Proc. § 59:404 ("A pleading accompanying a motion to intervene under Fed. R. Civ. P. 24(c) should be one of those described in Fed. R. Civ. P. 7(a) (that, is a complaint [or] an answer … so that all the parties understand the position, claims, and nature of relief sought by the applicant.").

[4]  For example, the three Nygård Parties claim a group "interest" in the alleged "misappropriated materials," Mot. at 3, but the purported (and unenforceable) agreements are between Mr. Feralio and Nygård International Partnership only.  Feralio Decl. ¶ 2.   Nor is there an explanation for *who* owns the purported "business trade secret," "copyright," and "personal privacy" rights, Mot. at 4, that form the basis for intervention.

[5]  *See also R.I. Fed'n of Teachers v. Norberg*, 630 F.2d 850, 854 (1st Cir. 1980) ("Whether of right or permissive, intervention under Rule 24 is conditioned by the Rule 24(c) requirement that the intervenor state a well-pleaded claim or defense to the action" and the requirement "is of particular pertinence" where the parties "are unable to perceive" a colorable basis for the intervenor's allegations); *In re Bank of Am. Corp. Sec.*, 2012 WL 1674299, at *3 (S.D.N.Y. May 14, 2012) (denying motion to intervene where, among other reasons, proposed intervenors had not submitted "any such pleading"); *Gould v. United States*, 2012 WL 75425, at *1 (S.D.N.Y. Jan. 4, 2012) (same); *SEC v. Bear, Stearns & Co.*, 2003 WL 22000340, at *4 n.3 (S.D.N.Y. Aug. 25, 2003) (denying motion to intervene because intervenors "failed to follow the strictures of Rule 24(c)").

how they "clearly have standing," as they asserted during the September 11, 2014 hearing, Weitzman Decl. Ex. A ("Hrg. Tr.") 10:13–18, 15:22, 16:7–9, their brief glosses over the thorny threshold questions of intervention and standing in 1782 actions.  For example, the Nygård Parties do not squarely address:  (1) whether and to what extent they must demonstrate Article III standing in order to intervene (as they apparently concede, they must);[6] (2) the fact that two of the proposed intervenors (Nygård International and Nygård, Inc.) are not parties to the foreign proceeding, and therefore do not have standing under the rule that the material is sought for use in foreign litigation to which they are parties; (3) whether Mr. Nygård's position as a party to just *one* of the *seven* foreign proceedings gives him standing to challenge the entire 1782 Application (it should not); and (4) whether the litany of purported "protectable interests" identified by the Nygård Parties allows them to challenge the 1782 Application under Rule 24 or under a separate standing doctrine (they do not).

The Nygård Parties fail to grapple with these issues, and most of the authority they cite arises in completely unrelated circumstances having nothing to do with a 1782 application.  As this Court recognized during the hearing, the one principle that does seem clear, however, is that a party who is properly before the court challenging a 1782 application may *only* raise an objection that the production will interfere with a privilege, usually the attorney-client privilege. Hrg. Tr. 9:20–10:4.  This principle is stated in the *Chevron* case,[7] and is consistent with how this

---

[6] *Diamond v. Charles*, 476 U.S. 54, 68–69 (1986) (noting circuit split on this issue); *Floyd v. City of N.Y.*, -- F.R.D.--, 2014 WL 3765729, at *48 (S.D.N.Y. July 30, 2014) (collecting authority that stands for the rule that a proposed intervenor who "seeks to pursue an agenda in conflict" with the existing parties must satisfy a separate Article III standing inquiry).

[7] *In re Chevron Corp.*, 736 F. Supp. 2d 773, 779 n.20 (S.D.N.Y. 2010) ("The Lago Agrio plaintiffs however, lack standing to object to the application regardless of whether it is treated as a new § 1782 application, except to the extent, if any, that they have a claim of privilege.") (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness.")).

Circuit has treated such objections,[8] as well as the text of the statute.  28 U.S.C. § 1782(a) ("A person may not be compelled to . . . produce [discovery] in violation of any legally applicable privilege.").  It also comports with Congress's clear policy that § 1782 should be interpreted broadly to assist with discovery in foreign proceedings.  *Intel*, 542 U.S. at 248 ("Section 1782 is the product of congressional efforts, over the span of 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals.").[9]

The Nygård Parties attempt to stretch this rule beyond recognition, arguing that any third party with any "personal right" can object to a 1782 application.  Mot. at 11 (claiming personal rights in footage because it depicts, *inter alia*, "personal social events hosted by Mr. Nygård," "international meetings concerning the Nygård Companies," and "meetings concerning new retail stores").  But they cite no case law that supports that radical position, and Petitioners are aware of none.  In any event, this Court should not be distracted by the Nygård Parties' sideshow on standing.  Petitioners have already submitted a broad protective order, following negotiations with the Nygård Parties and Mr. Feralio, to address any legitimate privilege or privacy concerns.[10]  That is why Petitioners gave Mr. Nygård notice of this action in the first place.

---

[8]   *Estate of Ungar v. Palestinian Auth.*, 332 Fed. Appx. 643, 644 (2d Cir. 2009) (party to foreign proceeding had standing to challenge subpoena to law firm on attorney-client privilege grounds); *Chevron Corp. v. Berlinger*, 629 F.3d 297, 309 (2d Cir. 2011) (creator not entitled to withhold video footage under journalist privilege).

[9]   The Nygård Parties argue that the holding in *Chevron*—that a third party has standing to challenge a 1782 application, if at all, only to the extent "they have a claim of privilege"—is incorrect because the case cited (in a string cite) a treatise that stands for a broader proposition in a context unrelated to the *Chevron* case or this case, namely, that "personal rights" may be a basis on which a *party* may challenge a subpoena *to* a third party.  Mot. at 5 n.7 (quoting 9A Wright & Miller, Fed. Prac. & Proc. § 2459 (3d ed. 2008)).  That the *Chevron* court cited that treatise does not mean it incorporated it into this context wholesale.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 66–67 (1996) ("We adhere … not to mere *obiter dicta*, but rather to the well-established rationale upon which the Court based the results of its earlier decision").  The Nygård Parties cannot dispute that the *holding* in *Chevron* expressly rejected a broader standing rule.

[10]  At most, their intervention should only be for the *limited purpose* of participating in the discussions on the protective order that will govern discovery, which will adequately and fairly protect any purported interest.  *See, e.g.*, *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 471, 473 (9th Cir. 1992) (permitting limited purpose intervention); *Maryland Cas. Co. v. W.R. Grace & Co.*, 1994 WL 419787 (S.D.N.Y. Aug. 10, 1994) (same).

## IV.   THE MOTION TO QUASH SHOULD BE DENIED

Even if any of the Nygård Parties are allowed to intervene, their motion to quash should be denied on the merits.  *See In re Grand Jury Matter*, 770 F.2d 36, 39 (3d Cir. 1985) (assuming without deciding proposed intervenor had standing and denying motion to quash on the merits).

### A.      The Statutory and Discretionary Factors Favor Discovery

The Nygård Parties do not—and cannot—dispute that the three statutory § 1782 factors are satisfied, as this Court correctly stated during the September 11, 2014 hearing.  Hrg. Tr. 8:7–8 ("[T]he statutory requirements of [the] 1782 subpoena are met.").  The four *Intel* discretionary factors likewise weigh strongly in favor of discovery.

**First *Intel* Factor.**  This factor considers whether the foreign tribunal has jurisdiction over the party from whom discovery is sought.   Where the § 1782 relief is sought from a nonparticipant outside the foreign tribunal's jurisdiction, evidence is "unobtainable absent § 1782(a) aid."  *Intel*, 542 U.S. at 263.  The "relevant inquiry is whether the evidence is available to the foreign tribunal."  *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 193 (S.D.N.Y. 2006).

Here, it is undisputed that Mr. Feralio is a United States citizen residing in the United States and is not a party to any of the seven Bahamian actions.  Feralio Supp. Decl. ¶ 1.  He is therefore outside the Bahamian courts' jurisdiction.   Adams Decl. ¶¶ 13–14.  Because the evidence is "unobtainable" in the Bahamas, this factor weighs in favor of granting the 1782 Application.  *Intel*, 542 U.S. at 263; *see also In re Strand Invs. Ltd.*, 2009 WL 2225536, at *1 (S.D. Fla. July 24, 2009) (where target was outside jurisdiction of Bahamas, evidence was not obtainable absent 1782 discovery).

The Nygård Parties baldly assert that Petitioners have "no need for Section 1782 relief" because Mr. Feralio has "voluntarily agreed to submit to the jurisdiction of the Bahamian courts" and Petitioners have agreed to pay for his trip.  Mot. at 8–9.  In reality, the "Bahamian Courts

have no extraterritorial powers to compel a non-party abroad to provide discovery," and "individuals cannot contractually expand the Bahamian courts' jurisdictional reach."   Adams Decl. ¶¶ 13–14; *see also* Smith Decl. ¶ 14.   The Nygård Parties do not and cannot cite authority to the contrary.[11]   Mr. Feralio has been asked to cooperate with this proceeding and to subject himself to the jurisdiction of this Court.   Feralio Decl. Ex. 1 at 2–3, Dkt. 4-1.   He will *not* travel to the Bahamas because he lives in mortal fear of Mr. Nygård and his many associates there.   *See* Feralio Supp. Decl. ¶¶ 22–29 (describing Mr. Nygård's threatening conduct in the past and recent attempts to intimidate Mr. Feralio shortly after the filing of this petition); Feralio Decl. ¶ 10, Dkt. 4.   Given Mr. Nygård's power and ability to influence Bahamian law enforcement and politicians, Feralio Supp. Decl. ¶ 24, it is too unsafe for Mr. Feralio to travel to the Bahamas, where he could very well be arrested, prosecuted, and have the materials either stolen or confiscated.   *See*, *e.g.*, Smith Decl. ¶¶ 15–20.   Petitioners have no intention of requesting that Mr. Feralio travel to the Bahamas, which is precisely why they filed this 1782 Application.

Mr. Feralio's fears are well-grounded.   As just one example, Mr. Nygård's personal lawyer and associate led a mob riot against and threatened the life of the lead lawyer for Save The Bays, an episode recounted here in a sworn declaration.   *See* Smith Decl. ¶¶ 15–20.   Indeed, the use of violence, intimidation, and manufactured lawsuits by Mr. Nygård and his supporters to retaliate against those who oppose Mr. Nygård is well-documented.[12]   In this very case, Mr.

---

[11]   The Nygård Parties' reliance on *In re Leret*, 2014 WL 2803573 (D.D.C. June 20, 2014) to assert that Mr. Feralio has "voluntarily agreed to submit to the jurisdiction of the Bahamian courts" is misplaced.   Unlike Mr. Feralio, the target of the discovery request in *Leret* was a "party to two of the three foreign proceedings," "voluntarily offer[ed] to submit to [applicants'] discovery requests in Venezuela," and "executed a declaration" in Venezuela which "stated his intent not to raise any personal jurisdiction or process defenses to such requests."   *Id.* at *3 (internal quotation omitted).   Even if Bahamian jurisdiction over Mr. Feralio were questionable (it is not), this factor would still favor discovery.   *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) (first *Intel* factor favored discovery given "questionable" jurisdiction of foreign panel).

[12]   Afia Decl. ¶¶ 13, 69–151 (Mr. Nygård unleashes a wide-ranging retaliatory Smear Campaign against Mr. Bacon); *id*. ¶¶ 14, 91, 132 (Mr. Nygård's supporters carry out large public protest in Bahamas propounding false accusations about Petitioners); *id.* ¶ 7 n.2 (Mr. Nygård unsuccessfully pursues criminal action against Mr.

Nygård has tried to intimidate Mr. Feralio, even while he was within the protective embrace of the U.S. court system.[13]   *See* Feralio Supp. Decl. ¶¶ 25–29.   Once he is abroad, this Court and United States authorities will have no meaningful ability to protect him.

Moreover, the physical evidence is not available to the foreign tribunal absent § 1782 aid. The Nygård Parties' assertion that Petitioners should seek discovery from Mr. Nygård, Mot. at 9, is contradicted by their own statements that he does not possess the materials.  *See* Clifford Decl. ¶ 13 (Nygård Parties "possess only a fraction of the video footage that Feralio recorded").  And there is no substitute for Mr. Feralio's deposition.

In any event, Petitioners should not be required to seek evidence from Mr. Nygård, who has for years operated an underground Smear Campaign against Mr. Bacon and has gone to great lengths to silence his critics, *see* Weitzman Decl. Exs. F–O, and to prevent Mr. Feralio's evidence from seeing the light of day, *see* Feralio Supp. Decl. ¶¶ 25–30.   Moreover, Mr. Nygård's proxies in the Bahamas have repeatedly attempted to stymie Petitioner's efforts to uncover the Smear Campaign.  *See, e.g.*, Afia Decl. ¶¶ 98–110, 116–19.  In light of this history, it would be unreasonable to require Petitioners to first seek the evidence from Mr. Nygård, which, in any event, is not what the law requires.  *See Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) (nothing in the text or legislative history of § 1782 requires "extra-statutory barriers to obtaining discovery such as an exhaustion requirement").

---

Bacon; Attorney General of Bahamas later issues *nolle prosequi*); *id.* ¶ 43 (Mr. Nygård's agents vandalize Mr. Bacon's property because of Mr. Bacon's opposition to Mr. Nygård); *id.* ¶¶ 44–46 (Mr. Nygård provokes a police raid of Mr. Bacon's Bahamian home; Police Commissioner later apologizes); Afia Decl. Ex. A, Kai Falkenberg, *Peter Nygård Answers to No One*, Forbes, Nov. 18, 2010 ("Nygård has been accused of abusive labor practices, tax evasion, sexual harassment and rape. . . .  Punching back hard, he has sued his accusers and intimidated his critics with a small army of lawyers.").

[13]   Mr. Nygård is a serial litigant represented in recent years by a litany of lawyers in the United States, Canada, and the Bahamas, including Keod Smith, Thomas Evans, Seyfarth Shaw, Wilson Elser, Fillmore Riley, Eaton & Van Winkle, Parker Milliken Clark O'Hara, and Nadrich & Associates.  Weitzman Decl. ¶¶ 5–18. He certainly knew that he cannot contact a represented witness in the way he did.

**Second _Intel_ Factor.**  The Nygård Parties do not dispute that the second factor—that the foreign tribunal is receptive to federal court assistance under § 1782—is satisfied.  _See_ Pet. Mem. at 23–24; _In re Strand_, 2009 WL 2225536, at *1; Smith Decl. ¶ 10.

**Third _Intel_ Factor.**  The third factor considers whether the applicant is attempting to "circumvent foreign proof gathering restrictions."  _Intel_, 542 U.S. at 265.  So long as a petitioner can demonstrate "a good faith basis for believing that it will be able to use" the discovery in the foreign litigation, this factor weighs in favor of granting the petition.  _In re Hill_, 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007).

Here, the 1782 Application seeks highly valuable evidence relevant for use in ongoing foreign proceedings.  _See_ Pet. Mem. at 16–19; Adams Decl. ¶¶ 5–11.  And the Nygård Parties do not—and cannot—point to a single specific proof-gathering restriction under Bahamian law that would be circumvented by this discovery.

The Nygård Parties' argument that the Court should quash the subpoenas because Petitioners should seek discovery from Mr. Nygård in the Bahamas, Mot. at 11, is incorrect, _see_ Adams Decl. ¶¶ 11–16, and has already been rejected by this Court, Hrg. Tr. 8:10–1, and by courts across the country.[14]  The Nygård Parties and the Bahamian Government are afforded protections under Bahamian law. Evans Decl.¶ 13.  These protections, which can be properly brought in the Bahamian court, Smith Decl. ¶¶ 12–13, are in no way limited or hindered by the 1782 Action, Evans Decl. ¶ 23.

Also defying reality is the Nygård Parties' assertion that the 1782 Application is an "impermissible fishing expedition" designed to harass them.  Mot. at 12–13.  As the Supreme

---

[14]  _See, e.g._, _Intel_, 542 U.S. at 253 ("[S]ection 1782(a) does not impose … a [foreign-discoverability] requirement"); _Heraeus Kulzer, GmbH v. Biomet, Inc._, 633 F.3d 591, 597 (7th Cir. 2011) (district court's denial of 1782 application because petitioner "could get all the discovery it needed by invoking German discovery procedures" was "serious legal error" warranting reversal).

Court has explained, "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); 8 Wright & Miller, Fed. Prac. & Proc. § 2007 (3d ed.). Rather, "the deposition-discovery rules are to be accorded a broad and liberal treatment," *Hickman*, 329 U.S. at 507, clearly permitting discovery here.  It is undisputed that Mr. Feralio acted as Mr. Nygård's videographer at the time of the events at issue in the Bahamian actions. *See* Feralio Decl. ¶ 2; Pet. Mem. at 3–4.  Indeed, Mr. Feralio both averred and produced evidence demonstrating that he made videos defaming Mr. Bacon at Mr. Nygård's direction.  Feralio Decl. ¶ 13; *see also* Palladino Decl. ¶¶ 12–22.  This evidence is, at the very least, reasonably calculated to lead to the discovery of admissible evidence for the Bahamian actions.  *See* Fed. R. Civ. P. 26(b)(1); Snyder Decl. Ex. A, Dkt. 7; Adams Decl. ¶¶ 5–11; Smith Decl. ¶ 11.

**Fourth *Intel* Factor.**  This factor considers whether the subpoenaed party will suffer an undue burden.  Here, Mr. Feralio has agreed that the production would not be intrusive or burdensome to him.

At the September 11 hearing, this Court invited the Nygård Parties to provide "legal authority" on whether this factor considers claims of burden and intrusiveness on third parties.  Hrg. Tr. 9:4–12.  The Nygård Parties failed to provide such authority, no doubt because the fourth factor plainly addresses whether "the subpoena … subjects the *recipient* to 'undue burden.'"  *In re Gushlak*, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) (emphasis added).  And a party may not assert that a "recipient of the subpoena would be subjected to an undue burden" when the recipient does not object.  *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013), *appeal dismissed* (Apr. 10, 2014) (citation omitted); *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (same);

*cf. Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 2013 WL 238176, at *1 (S.D.N.Y. Jan. 13, 2013) (non-recipient of subpoena had "no claim" of "burden imposed by the subpoena").  Because the Nygård Parties are not recipients of the subpoenas, they cannot oppose the petition based on this factor, which thus favors granting the Application.[15]

### B.    No Cognizable Attorney-Client Privilege Bars the Discovery

The Nygård Parties have also utterly failed to satisfy their burden of demonstrating that the attorney-client privilege is a valid basis to quash Petitioners' subpoena.  *See* Pet. Mem. at 26–28; *In re Grand Jury Subpoenas*, 318 F.3d 379, 384 (2d Cir. 2003) ("the party invoking a privilege bears the burden of establishing its applicability to the case at hand").  Instead, the Nygård Parties rely on a single speculative and conclusory paragraph in Mr. Clifford's declaration. Dkt. 48 ("I also believe that Feralio attended or was present at private meetings between Mr. Nygård and/or the Nygård Companies and counsel, which Feralio may or may not have recorded.").  Mr. Clifford's equivocal statement—which, even if admissible, is insufficient to meet the heavy burden of establishing attorney-client privilege—lacks foundation and should not be considered.  *See* Fed. R. Evid. 602; *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 203 (S.D.N.Y. 2013) (privilege "showing must be . . . based on competent . . . admissible evidence").

In fact, Mr. Clifford's conjecture is mistaken.  In his sworn statement, Mr. Feralio attests that he does not *ever* recall "attending or recording meetings" containing privileged communications, and his review of the recording to date has confirmed that the subpoenaed videos do *not* contain any such communications.  Feralio Supp. Decl. ¶ 15.  In addition, Mr. Feralio avers that on the one instance where he was present for a meeting between Mr. Nygård and his attorney, Mr. Nygård "directed [him] to wait outside and not record the meeting," *id.*, directly refuting Mr. Clifford's declaration.  Regardless, Mr. Feralio's presence during any such

---

[15]   In any event, there has been no particularized showing of burden or intrusiveness to the Nygård Parties.

13

conversation would have waived the privilege.  *See* Pet. Mem. at 27.  The Nygård Parties'
argument that privilege is maintained because Mr. Feralio was purportedly subject to a form
confidentiality agreement, Mot. at 6 n.8—that is silent on the issue of privilege—is wrong.  *Cf.*
*Gruss v. Zwirn*, 2013 WL 3481350, at *4 (S.D.N.Y. July 10, 2013) (attorney-client privilege
waived despite existence of confidentiality agreement).[16]

There is thus "no basis for the Court to impose the 'extraordinary measure' of quashing
[the] subpoena based on [the Nygård Parties'] 'purely speculative' privilege claim."  *U.S. Dep't*
*of Treasury*, 2014 WL 2767592, at *7 ("If the 'good cause' requirement for quashing a subpoena
could be met by a bare assertion that privilege review constitutes an undue burden, discovery
under the Federal Rules would quickly grind to a halt.") (citations omitted).

### C.    No Purported Interest in the Evidence Justifies Quashing the Subpoenas

The Nygård Parties argue that the subpoenaed materials should not be produced because
they are "subject to strict ownership, confidentiality, and copyright protections."  Mot. at 14–18.
But they fail to cite a single case where a court has so ruled.  In fact, courts across the country,
including in this Circuit, routinely grant 1782 petitions for similar materials, as well as material
far more sensitive and confidential than those at issue here.  *See, e.g., Chevron Corp. v.*
*Berlinger*, 629 F.3d 297, 300 (2d Cir. 2011) (affirming order directing filmmaker to produce
hundreds of hours of video evidence pursuant to § 1782); *McKevitt v. Pallasch*, 339 F.3d 530,
535 (7th Cir. 2003) (upholding order under § 1782 requiring journalists to produce tapes in
connection with Northern Ireland criminal terrorist prosecution); *In re Letters Rogatory*, 144
F.R.D. 272, 276 (E.D. Pa. 1992) (denying motion to quash in § 1782 action, noting that

---

[16]   The Nygård Parties do not dispute that "any communications between Nygård and his counsel regarding the
Smear Campaign or Nygård's land grab would lose any protection pursuant to the crime-fraud exception to the
attorney-client privilege."  Pet. Mem. at 28.

"appropriate response" to concerns about production of "Argentine national security" was for court to enter protective order); Pet Mem. at 29–30 (collecting authority).[17]

**Ownership.**  The Nygård Parties' accusation that Mr. Feralio misappropriated the video footage is flatly untrue, contradicted by their own actions, and irrelevant to the 1782 inquiry.  As an initial matter, none of the purported agreements between Mr. Feralio and Nygård International prohibit him from retaining raw video files or copies of his completed work product, which is, of course, customary in the profession.  *See* Feralio Supp. Decl. ¶¶ 11, 16.  The Nygård Parties do not contend otherwise.  And the Nygård Parties never even *requested* that Mr. Feralio return or delete the video footage.  *See id.* ¶¶ 12–17 ("In fact, it was useful for me to hold on to those files because I was able to help Nygård International employees find specific clips when they needed materials . . . .").  Mr. Clifford's suggestion otherwise lacks foundation and is contradicted by the transparent procedures Mr. Feralio used to download footage to the Nygård servers while retaining his own copy, which was widely understood by those inside and outside the Nygård Companies.  *Id.* ¶¶ 18, 20.  And, as recently as July 2014, Nygård employees (including the company president) contacted Mr.  Feralio offering to compensate him for images of Mr. Nygård.  *Id.* ¶ 19, Exs. B, C.  Despite knowing for years that Mr. Feralio retained the footage, at no point did anybody from the Nygård Companies ever suggest that Mr. Feralio had "stolen" or "misappropriated" these materials.  *Id.* ¶¶ 12–17.  They are only objecting to his possession now because he has expressed a willingness to cooperate with the subpoenas.  *See id.* ¶ 13.

In any event, whether Mr. Feralio lawfully possesses the video footage has no bearing on whether to grant the § 1782 Application for materials that are, undisputedly, in his possession, as

---

[17]  The Nygård Parties' arguments are particularly ironic given that Nygård International brought a § 1782 action in the Northern District of California against Google, seeking material—including videotapes—without regard for the privacy or ownership interests of the copyright holder.  *See* Weitzman Decl. Ex. E (Nygård seeking "all documents," defined to include "photographs . . . videotapes, [and] motion pictures… of any kind" "tending to identify" information about authors, commenters, and contributors on Bahamian entertainment blog).

"legal ownership of the documents is not determinative" under federal discovery rules.  *United States v. Stein*, 488 F. Supp. 2d 350, 361 (S.D.N.Y. 2007) (Kaplan, J.) (collecting authority).[18]

**Confidentiality Provisions.**  The Nygård Parties also argue that this Court should quash the subpoena because some of the materials requested may be subject to a confidentiality provision in various agreements with Mr. Feralio.[19]  But courts have consistently rejected this argument, which, if permitted, would allow parties to manipulate the discovery process and hide their wrongdoing through private agreements.[20]  To allow the Nygård Parties to contract out of discovery would be particularly egregious here, where the confidentiality sections are "form" provisions, appended to the back of a contract signed between two parties with dramatically unequal bargaining power.  Pet. Mem. at 29, n.17; Feralio Suppl. Decl. ¶ 4 ("I was simply told that this was what Nygård International paid and I needed to sign the … Agreement").[21]

**Copyright.**  The Nygård Parties' contention that a purported copyright in the subpoenaed material bars the 1782 Application is baseless.  The Copyright Act protects the unauthorized

---

[18]  *See also Burdeau v. McDowell*, 256 U.S. 465, 475–76 (1921) (upholding subpoena for incriminating papers wrongfully taken by individuals in possession); *United States v. McGuire*, 381 F.2d 306, 312–14 (2d Cir. 1967) (recordings admissible even if they were originally stolen by third parties); In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995) ("legal ownership of the document is not determinative . . . within the meaning of Rule 34"); *Hayles v. Wheatherford*, 2010 WL 4739484, at *1 (E.D. Cal. Nov. 16, 2010) ("A party having actual possession of documents must allow discovery even if the documents belong to someone else.").  The Nygård Parties' cases on this point are not about discovery at all.  *Lahr v. Fulbright & Jaworski, LLP*, 1996 WL 34393321, at *4 (N.D. Tex. July 10, 1996) (suppressing stolen attorney's notes from evidence)

[19]  It is doubtful the 2011 Agreement (if enforceable at all) even survived Mr. Feralio's January 2012 "resignation," and Mr. Feralio *never* re-executed an agreement with Nygård International.  Feralio Supp. Decl. ¶¶ 6–7.  The 2013 Agreement was never executed.  *Id.* ¶¶ 7–8.

[20]  *See, e.g., In re Oxycontin Antitrust Litig.*, 2013 WL 1701009, at *2 (S.D.N.Y. Apr. 15, 2013) ("[T]here is no privilege for documents merely because they are subject to a confidentiality agreement."); *In re Subpoena Duces Tecum Served on Bell Commc'ns Research, Inc.*, 1997 WL 10919, at *3 (S.D.N.Y. Jan. 13, 1997), *modified on other grounds*, 1997 WL 16747 (S.D.N.Y. Jan. 17, 1997) (use of confidentiality agreements to bar discovery would "clearly impede the truth-seeking function of discovery in federal litigation, as all individuals and corporations could use confidentiality agreements to avoid discovery") (collecting cases).

[21]  In any event, the nondisclosure clauses in the contract only cover "information involving the *business or the affairs of Nygård International Partnership*," and not Mr. Nygård's unlawful conduct caught on tape.  Further, the law will not enforce confidentiality provisions that shield illegal acts from disclosure.  *See In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1136–37 (N.D. Cal. 2002) ("To the extent that this agreement can be read to prohibit an employee from providing any information about any wrongdoing by JDSU, it is plainly unenforceable."); *Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 444 (S.D.N.Y. 1995).

reproduction and distribution of copyrighted images, *see Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975); *On Davis v. Gap, Inc.*, 246 F.3d 152, 165 (2d Cir. 2001), but it does not bar discovery or the issuance of lawful subpoenas.  That is why courts routinely allow subpoenas for copyrighted material.  *See, e.g*, *Gonzalez v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 36–37 (2d Cir. 1999) (affirming motion to compel "clearly relevant" video outtakes from NBC that "may assist the trier of fact in assessing…probable cause" because "a deposition is not an adequate substitute for the information that be obtained from the videotapes"); *Cohen v. City of New York*, 255 F.R.D. 110, 120 (S.D.N.Y. 2008) ("If an entrepreneur were to set up a camera at a busy intersection hoping to record an automobile accident and then sell the film to the parties in the resulting tort suit, there is little doubt that a court would enforce the subpoena for the evidence without requiring the litigants to pay a fee to the film-maker.").

Indeed, 1782 petitions involving subpoenas for copyrighted material are routinely granted.  *E.g.*, *McKevitt*, 339 F.3d at 535 (videotapes made for a biography); *Chevron*, 629 F.3d at 300 (videotapes made for a documentary).  Even Nygård International successfully brought a 1782 action against Google seeking photographs and videotapes, *see* Weitzman Decl. Exs. D–E.

The Nygård Parties' position to the contrary—which conflicts with federal discovery rules, *cf.* Fed. R. Civ. P. 26 advisory committee's note (2007) ("Books remain a proper subject of discovery"); Fed. R. Civ. P. 34(a) (discovery includes data "stored in any medium"), and Copyright law, *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204–5 (N.D. Cal. 2004) (barring misuse of copyright as a "sword to suppress the publication of embarrassing content rather than as a shield to protect its intellectual property")—should be rejected.

### D.     The "Forum Selection Clause" in the Contracts Is Irrelevant

Shortly after the September 11 hearing on this issue—and the day before filing this motion—the Nygård Parties brought an "emergency" lawsuit against Mr. Feralio in Los Angeles

Superior Court for allegedly breaching certain employment agreements.  *See Nygård Int'l P'ship v. Feralio*, BC558003 (Cal. Super. Ct.), Marks Decl. Ex. A (Complaint, dated Sept. 17, 2014). The Nygård Parties now argue that this Court should quash the subpoenas in light of the California Action because certain "contractor and assignment agreements" between Mr. Feralio and Nygård International "provide for exclusive jurisdiction" in that forum.  Mot. at 19.  Yet they cite no authority for this proposition; indeed it would be contrary to law and equity.  This is a transparent attempt to subvert the 1782 Application and to interfere with this Court's authority: the Nygård Parties are desperately trying to seize the subpoenaed materials—through a baseless replevin claim—before this Court can order discovery of them.

As an initial matter, the Nygård Parties repeatedly misrepresent what their own contracts provide.  *See* Mot. at 19; Nygård Parties' Letters to the Court, Sept. 10 & 18, 2014, Dkt. 30, 51. The supposed "exclusive jurisdiction" clauses in the independent contractor agreements are "attornment" clauses that merely *permit* but do not *require* jurisdiction in California.[22]  And the 2013 contractor agreement they repeatedly cite was never even signed by Mr. Feralio, so it clearly cannot bind him.  Dkt. 47-3; Feralio Supp. Decl. ¶¶ 7–8.

Further, this argument is yet another sideshow intended to distract this Court from the relevant inquiry—whether discovery is proper under § 1782 and the Federal Rules of Civil

---

[22] The 2011 independent contractor agreement provides that it shall be interpreted under California law and that "the parties shall attorn to the laws and the relevant court of the State of California." Dkt. 47-2 at 3. "Attorn" is a legal term of art used in Canada, where the Nygård companies are based.  *See* Feralio Supp. Decl. ¶ 14.  It means "to voluntarily submit" to a court's jurisdiction, Weitzman Decl. Ex. C (Dictionary of Can. Law 93 (3d ed. 2004)), and does not imply that such jurisdiction is exclusive absent express language to that effect.  *Old N. State Brewing Co. v. Newlands Serv. Inc.*, 1998 CarswellBC 2294 ¶ 37 (B.C. Ct. App.) (clause stating that "the parties will attorn to the jurisdiction of the Courts of … British Columbia" merely conferred "concurrent" and not "exclusive" jurisdiction); *Simon v. Foley*, 2011 WL 4954790, at *6 (W.D.N.Y. Oct. 18, 2011) (clause stating that "[e]ach of the parties hereto irrevocably attorn to the jurisdiction of the courts of … Ontario" did not make Ontario exclusive forum).   Applying this definition of "attorn" and construing the provision under California law, the contract simply makes the parties *subject* to jurisdiction in California but does not require venue there.  *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77–78 (9th Cir. 1987) (provision stating that California courts "shall have jurisdiction over the parties" was not a mandatory forum selection clause); *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995) ("to be mandatory," clause must contain language clearly designating forum as "the exclusive one").

Procedure.[23]  As discussed above, whether Mr. Feralio violated California state law by retaining

or disclosing these materials has no bearing on whether they are discoverable.  *See*, *supra*, Part

IV.C.  Since these third-party contracts—which do not even involve Petitioners—are irrelevant

to the 1782 analysis, the forum selection clauses therein are equally irrelevant.

Next, the Nygård Parties contend that the Court "may . . . consider staying the

Application pending a determination of the California court."  Mot. at 19 n.17.  But the Court has

already indicated that it plans to resolve this matter promptly, as is appropriate.  Hrg. Tr. 27:5–6,

35:18–21.  And the Nygård Parties have hardly shown that the "extraordinary remedy" of a stay

would be proper here.  *See, e.g.*, *Jackson v. Johnson*, 985 F. Supp. 422, 424 (S.D.N.Y. 1997).  To

the contrary, at the hearing on the temporary restraining order in the California Action, they

argued that these proceedings concern distinctly separate issues:  "The 1782 Application is about

the scope of discovery within the 1782 Application.  What it is not about is . . . whether Feralio

breached his contractual obligation.  That's really what our claims are about here[.]"  Weitzman

Decl. Ex. B at 18:4–9, Sept. 18, 2014.  They cannot have it both ways.  *Am. Stock Exch., LLC v.*

*Towergate Consultants Ltd.*, 2003 WL 21692814, at *3–4 (S.D.N.Y. July 21, 2003) (denying

motion to stay where, among other things, foreign action involved different issue).  And, whether

Mr. Feralio breached a contract in possessing the subpoenaed materials is immaterial to the 1782

inquiry.  *See*, *supra*, Part IV.C.

More importantly, a stay would frustrate this proceeding and this Court's authority over

the subpoenaed materials if the Nygård Parties in the meantime succeeded in seizing the videos

from Mr. Feralio.  It would countenance the Nygård Parties' attempted end-run around the rule

that "unlawful" ownership and third party confidentiality agreements do not bar discovery.  *Id*.

---

[23]  *See* 28 U.S.C. § 1782 ("[T]he testimony or statement shall be taken, and the document or other thing produced,
in accordance with the Federal Rules of Civil Procedure."); *In re Noboa*, 1995 WL 581713, at *2 (S.D.N.Y.
Oct. 4, 1995) (discovery taken under § 1782 is subject to Federal Rule of Civil Procedure 26).

And such a result would substantially prejudice Petitioners by depriving them of likely critical evidence in the Bahamian actions.  Petitioners' chances of obtaining these materials from the Nygård Parties are practically zero given that Mr. Feralio uniquely possesses the videotapes and information and in light of the obstructionist conduct of the Nygård Parties and their proxies in this and in the Bahamian litigations.  Afia Decl. ¶ 92.  On the other hand, there will be no adverse effect if the Court denies the stay.

Significantly, the Nygård Parties do not—and cannot—dispute that this Court is the proper forum to decide the 1782 Application and motion to quash.  28 U.S.C. § 1782(a) ("The district court of the district in which a person resides or is found may order him to give his testimony or [] produce a document . . . ."); Fed. R. Civ. P. 45(d)(3)(A-B) (motions to quash subpoenas are directed to "the court for the district where compliance is required").

## V.  CONCLUSION

The motions should be denied, and the 1782 Application should be granted.

Dated:    September 24, 2014                    Respectfully submitted,

/s Orin Snyder
GIBSON, DUNN & CRUTCHER LLP
Orin Snyder
Avi Weitzman
Mary Beth Maloney
Ilissa Samplin
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile:212.351.4035

*Attorneys for Petitioners The Coalition To Protect Clifton Bay And Louis Bacon*