UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                  :
In re Application of THE COALITION TO PROTECT    :   Case No. 14 MC 258
CLIFTON BAY and LOUIS BACON for an Order         :
Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for   :   DECLARATION OF
Use in Foreign Proceedings.                      :   ROBERT K. ADAMS
                                                                  :
------------------------------------------------------------------x

**DECLARATION OF ROBERT K. ADAMS IN SUPPORT OF PETITIONERS'
APPLICATION PURSUANT TO 28 U.S.C. § 1782 AND IN OPPOSITION TO THE
<u>NYGARD PARTIES' MOTION TO INTERVENE AND TO QUASH THE SUBPOENAS</u>**

I, ROBERT K. ADAMS, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am an attorney admitted to practice as Counsel and Attorney-at-Law in The

Bahamas and have been a member, in good standing, of The Bahamas Bar Association since

1994. I am a partner of the law firm Graham Thompson, one of the preeminent law firms in The

Bahamas, where I serve as Chairman of the firm's Litigation and Dispute Resolution practice

group. I have a broad range of experience as both a litigator and an arbitrator in various industry

sectors, and I regularly appear as counsel before The Bahamas Supreme Court and Court of

Appeal. I have also appeared as counsel before The Privy Council, the highest appellate court in

the Bahamian legal system, located in London, England.

2.      Throughout the course of my career, I have held the posts of Acting Assistant

Registrar General of The Bahamas in 1992, Deputy Chairman of the Local Government

Licensing Authority for the city of Freeport on the Island of Grand Bahama in 1999, and Acting

Deputy Registrar of The Supreme Court during 1999 and 2001. Attached hereto as Exhibit A is

a true and correct copy of my Curriculum Vitae.

3.      I am counsel of record for Louis Bacon in the following Bahamian actions for

which Petitioners seek discovery from Mr. Feralio: *Bacon v. Sherman Brown & Steve*

*McKinney*, 2012/COM/gen (the "Brown Action"); *Bacon v. Earlin Williams*, 2012/CLE/gen/00923 (the "Williams Action"); *Bacon v. Phillippa "Lady" Russell*, 2013/CLE/gen/01616 (the "Russell Action"); and *Bacon v. Carvel Francis*, 2013/CLE/gen/01615 (the "Francis Action"). I am also well familiar with, and have reviewed the court filings in, the defamation action *Bacon v. Jones Communications Ltd. & Wendall Jones*, 2013/CLE/gen/01658 (the "Jones Action"). The Brown Action is an action for discovery against two persons residing within The Bahamas. The purpose of the Brown Action is to obtain information as to the identity of the person(s) behind the publication of several defamatory articles and statements concerning Louis Bacon as a part of a co-ordinated smear campaign to injure the reputation of Mr. Bacon (the "Smear Campaign"). All of the other actions referenced above are defamation actions. For ease of reference, however, I refer herein to the Brown, Francis, Russell, Williams, and Jones Actions as, collectively, the "Defamation Actions." Nygård International Partnership, Nygård Inc., and Peter Nygård are not parties to any of the Defamation Actions.

4.      I respectfully submit this declaration in support of Save The Bays' and Louis Bacon's application for discovery pursuant to 28 U.S.C. § 1782 from Stephen Feralio ("Section 1782 Action"), and in opposition to the motion of Nygård International Partnership ("Nygård International"), Nygård Inc. ("Nygård Inc."), and Peter Nygård ("Nygård") (collectively, the "Nygård Parties") to intervene and quash the subpoenas filed by Save The Bays and Mr. Bacon (collectively, "Petitioners") in the Section 1782 Action.

I.    **DISCOVERY SOUGHT FROM MR. FERALIO CAN BE USED IN EACH OF THE DEFAMATION ACTIONS**

5.      I have reviewed the declaration submitted by Thomas A.E. Evans, Q.C. in support of the Nygård Parties' motion ("Evans Declaration"), and there are several inaccuracies I would like to bring to the Court's attention.

6.      To be clear, the evidence sought by Petitioners in the United States from Mr. Feralio can be used, if relevant, in each of the Defamation Actions at issue in the Section 1782 Action.  For this reason, and as extensively set forth in Jenny Afia's declaration of August 12, 2014, Mr. Bacon seeks discovery from Mr. Feralio concerning specific communications, interactions, and events in connection with the Smear Campaign against Mr. Bacon that are relevant to each of those Defamation Actions.  (*See* Afia Decl. ¶¶ 111, 121, 132, 142, 151.)

7.      Indeed, Mr. Evans concedes that discovery is ongoing in three of the Defamation Actions—the Russell, Williams, and Francis Actions—and does not deny that evidence of the Smear Campaign would be relevant to each of those actions.

8.      With regard to the Brown Action, Mr. Evans states, without any support, that "[a]t this stage, the court has considered all of the evidence that it needed."  (Evans Decl. ¶ 17.)  Mr. Evans seems to imply that any evidence obtained by Petitioners in the Section 1782 Action will not be admissible in the Brown Action.  That is not the case.  The history and substance of the Brown Action is described in Ms. Afia's declaration.  (*See* Afia Decl. ¶¶ 98-111.)  After Mr. Brown (who runs two anti-Bacon websites) submitted a second affidavit that is largely contradicted by evidence already in the record, counsel sought on behalf of Mr. Bacon an evidentiary hearing in which we would cross-examine Mr. Brown.  Mr. Bacon is currently awaiting a hearing date for Mr. Brown's cross-examination.  (*See* Afia Decl. ¶¶ 109-10.)  Evidence obtained in the Section 1782 Action can certainly be used at Mr. Brown's cross-

3

examination. For example, evidence of Mr. Brown's involvement in the Smear Campaign can be used to challenge Mr. Brown's credibility and refute specific statements made in his affidavit at the upcoming hearing. Given the important role that we believe Mr. Brown plays in the Smear Campaign, the cross-examination of Mr. Brown is an important part of proving the Smear Campaign.

9.      Mr. Evans also states that "discovery is closed" in the Jones Action. (*See* Evans Decl. ¶ 22.) This seems to suggest that Mr. Bacon would be unable to use evidence obtained in the Section 1782 Action as part of the Jones Action. (*See* Evans Decl. ¶ 22.) In reality, though, evidence obtained as part of the Section 1782 Action can unquestionably be used in the Jones Action to prove up damages against the Jones Defendants. A hearing to assess damages, including aggravated and/or exemplary damages, is scheduled for November 12, 2014. Thus, any evidence obtained in the Section 1782 Action that is relevant to the calculation of damages in the Jones Action will be admissible at that November 12, 2014 hearing. For example, evidence that the Jones Defendants knowingly published defamatory material about Mr. Bacon with malevolence or for financial compensation at Nygård's request with cynical disregard for Mr. Bacon's rights would directly impact damages and, specifically, the availability of aggravated or exemplary damages for Mr. Bacon.

10.     In addition, while Mr. Bacon obtained a default judgment in the Jones Action on November 5, 2013 (Afia Decl. ¶ 149), that default action may be set aside. I understand that the Jones Defendants likely will seek to have the default judgment set aside prior to or at the November 12, 2014 hearing because they claim they answered Mr. Bacon's complaint but, due to an administrative error, the answer was inadvertently filed under the wrong docket. If that is the case, the Court is likely to set aside the default judgment and permit the Jones Defendants to

defend their case.  In that event, all aspects of the case will reopen and any evidence from the Section 1782 Action of the Jones Defendants' involvement in the Smear Campaign will also be relevant to issues of liability.

11.     Mr. Evans also fails to mention that, under Bahamian law, parties and their counsel have a continuing obligation to produce discovery as to any disputed matters throughout the hearing of every Bahamian action, even after the close of discovery. *See* The Bahamas Supreme Court decision in *Harajchi v United Mosko Construction Co*, Action No. 666 of 1989, per Justice Osadebay at paragraph 7 (a true and correct copy of which is attached hereto as Exhibit B).  While the court may set dates by which parties to an action must inspect documents and reply to discovery demands, the obligation to make disclosure about relevant issues remains ongoing until litigation ends.  Thus, the technical close of discovery does not serve as a bar to the introduction of new evidence in a given case.  Rather, parties are required under Bahamian law to bring new, relevant evidence to the court's attention at *any* point during the life of a case.

## II.    THE LIMITATIONS OF BAHAMIAN THIRD-PARTY DISCOVERY RULES MAKE IT IMPOSSIBLE TO COMPEL MR. FERALIO TO PROVIDE TESTIMONY AND EVIDENCE IN THE BAHAMAS

12.     I am aware that the Nygård Parties argue that Petitioners' Section 1782 Application should be denied because Mr. Feralio agreed, pursuant to a July 31, 2014 agreement with Belvedere Property Management, to make himself available to testify in any domestic or foreign judicial proceedings related to or concerning the Nygård Parties, upon request from Mr. Bacon or Belvedere Property Management.  The Nygård Parties contend that, based on that July 31 agreement, Mr. Feralio has "voluntarily agreed to submit to the jurisdiction of the Bahamian courts" and, as such, discovery for use in any Bahamian proceedings is not warranted from Mr. Feralio in the United States.  That is wrong as a matter of law, for several reasons.

13.     First, like the English Courts, the Bahamian courts have no extraterritorial powers to compel a non-party abroad to provide discovery. *See* The English High Court decision in *Mackinnon v Donaldson, Lufkin & Jenrette Securities Corporation* [1986] Ch. 482, per Justice Hoffman at page 490 B et seq. (a true and correct copy of which is attached hereto as Exhibit C). The subpoenas filed by Petitioners in the Section 1782 Action seek both documents and deposition testimony from Mr. Feralio.  A Bahamian court simply cannot compel, under any circumstances, the production of either documents or deposition testimony from Mr. Feralio, a non-party to the Bahamian proceedings located outside of the jurisdiction of the Bahamian courts.  Where a witness is located outside the jurisdiction of the Bahamian courts, there is no subpoena or process to compel that witness to produce documents or provide testimony in a Bahamian proceeding.  For this reason, parties in The Bahamas frequently initiate Section 1782 proceedings to obtain evidence located in the United States for use in their Bahamian actions. The alternative option is to issue letters of request for assistance to a foreign court, but that process is typically fraught with delays.

14.     Second, individuals cannot contractually expand the Bahamian courts' jurisdictional reach.   Because Mr. Feralio is located outside The Bahamas, beyond the jurisdictional reach of the Bahamian courts, he cannot be compelled to produce evidence or testify in any Bahamian proceeding, notwithstanding the July 31, 2014 agreement.  Indeed, that agreement purports to require Mr. Feralio to travel outside the United States to provide testimony if requested by Mr. Bacon, but in the event that Mr. Feralio were to refuse to comply with that provision, the Bahamian courts would have no ability to compel his specific compliance.  It must also be noted that the July 31, 2014 agreement does not require Mr. Feralio to bring evidence with him to The Bahamas.

6

15.     Third, oral depositions in civil litigation are not permitted as a matter of course in The Bahamas, unless the witness is gravely ill, unlikely to be available for trial, *and* consents to the preservation of his/her testimony pre-trial.  *See* Order 39 of The Rules of The Supreme of The Bahamas (a true and correct copy of which is attached hereto as Exhibit D).  There is no mechanism, however, for a Bahamian court to force a Bahamian resident or citizen to appear at an oral deposition, and certainly no way to force someone in the United States to attend a deposition.  In fact, this is why it is common for litigants in the Bahamas to seek deposition testimony from someone located in the United States through a Section 1782 proceeding like this one.  Thus, depositions are incredibly rare, and nearly non-existent, in The Bahamas.  Indeed, during my almost 20 years practicing law in The Bahamas, I have never participated in a single pre-trial deposition in The Bahamas.

16.     Fourth, there are substantial hurdles in The Bahamas to obtaining meaningful third-party discovery, even from Bahamian citizens and residents.  Bahamian courts permit limited discovery from non-parties, and that discovery is typically only at trial, not pretrial.  Although the Bahamian Rules of the Supreme Court (Order 38, Rule 13) contain a limited provision that permits a party to seek a pre-trial document production order against a non-party in certain instances, this rule is hardly ever invoked and rarely is such relief granted.  *See* Order 38 Rule 13 of The Rules of The Supreme Court of The Bahamas (a true and correct copy of which is attached hereto as Exhibit E).  Indeed, in my almost 20 years of legal practice in The Bahamas, I have only seen the rule invoked and granted once to require pretrial disclosure against a non-party.  And I note that this exception to the general rule prohibiting pretrial disclosures is not as broad as the civil discovery rules in the United States:  in The Bahamas, even under Order 38, Rule 13 of The Rules of The Supreme Court of The Bahamas, a party can

obtain a court order requiring the production of discovery pre-trial only upon a showing that the sought-after discovery is "necessary for the purpose of [the] proceeding." This is a much higher burden than likely to lead to admissible evidence, as is the standard in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Freeport, Grand Bahama, The Bahamas, September 23, 2014

ROBERT K. ADAMS