UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                      :

In re Application of THE COALITION TO PROTECT  :  Case No. 14 MC 258
CLIFTON BAY and LOUIS BACON for an Order      :
Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for  :  DECLARATION OF
Use in Foreign Proceedings.                   :  FREDERICK R. SMITH, Q.C.
                      :

-----------------------------------------------------------------x

## DECLARATION OF FREDERICK R. SMITH, Q.C. IN SUPPORT OF PETITIONERS' APPLICATION PURSUANT TO 28 U.S.C. § 1782 AND IN OPPOSITION TO THE NYGARD PARTIES' MOTION TO INTERVENE AND TO QUASH THE SUBPOENAS

I, FREDERICK R. SMITH, Q.C., pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am a Barrister, called to the Bar of England and Wales, and a Counsel and

Attorney called to the Bar of the Commonwealth of The Bahamas, both since 1977, and have

been in active practice since then. I am the managing partner of the Freeport, Grand Bahama

Chambers of The Bahamas law firm Callenders & Co., the oldest law firm in The Bahamas, now

in its 113th year. Over the course of my career, I have had extensive experience in a wide range

of civil and criminal litigation matters (including issues of constitutional, administrative, human

rights, personal injury, environmental, and regulatory law), and currently exclusively focus my

practice on civil litigation. I have, on numerous occasions, appeared before courts at all levels of

the Bahamian court system—the Magistrates Courts, Supreme Court, the Court of Appeal, and

the Privy Council, the highest court of appeals located in London, England.

2.     I was admitted to the Inner Bar of The Bahamas and appointed one of Her

Majesty's Counsel (Queen's Counsel) in October, 2009. Queen's Counsel is a formal

designation bestowed by the Governor General of The Bahamas upon an extremely limited

number of Counsel and Attorneys who have demonstrated excellence in the profession (over the

last 40 years only 15 out of approximately 1700 Attorneys). The honorable appointment is

conferred upon distinguished members of The Bahamas Bar that have been recommended by the Bench, The Bahamas Bar, the Attorney General, and the Prime Minister.

3.      Over the course of my career, I have served as Chairman of the Human Rights and Constitutional Law Committees of The Bahamas Bar Association, and as a member of the Bar Association's Executive Committee. I also acted as an examiner for The Bahamas Bar Constitutional Law Examination for ten years and previously served as President of the Freeport Law Society. I currently serve as President of the Grand Bahamas Human Rights Association, an NGO I helped form twenty-five years ago.

4.      I have, on multiple occasions, provided expert testimony regarding matters of Bahamian law in cases conducted in England, the United States, and Canada. I was also certified as an arbitrator and mediator by Harvard Law School in approximately 1994 and 1995.

5.      I am a director of the Coalition To Protect Clifton Bay ("Save The Bays"), one of the Petitioners in this action. I respectfully submit this declaration in support of Save The Bays' and Louis Bacon's application for discovery pursuant to 28 U.S.C. § 1782 from Stephen Feralio ("Section 1782 Action"), and in opposition to the motion of Nygård International Partnership ("Nygård International"), Nygård Inc. ("Nygård Inc.," together with Nygård International, the "Nygård Companies"), and Peter Nygård (collectively, the "Nygård Parties") to intervene and quash the subpoenas filed by Save The Bays and Mr. Bacon (collectively, "Petitioners") in the Section 1782 Action.

6.      The statements set forth below address two issues: First, this declaration addresses the status of the Judicial Review Action for which Section 1782 discovery is sought and Thomas A.E. Evans, Q.C.'s suggestions in his Declaration filed in support of the Nygård Parties that such evidence would not be admissible in a Bahamian court. *See infra* ¶¶ 7-14.

Second, this declaration addresses Mr. Evans assertion that Petitioners should be required to produce Mr. Feralio for examination in the Bahamas in lieu of this 1782 Application for evidence from Mr. Feralio. *See infra* ¶¶ 15-21.

## I.   THE JUDICIAL REVIEW ACTIONS

7.      I am counsel of record for Save The Bays in three ongoing judicial review actions in The Bahamas. Petitioners seek discovery from Mr. Feralio for use in two of those judicial review actions: *The Queen v. Rt. Hon Perry Christie et al Ex parte Coalition to Protect Clifton Bay*, 2013/PUB/jrv/00012 (the "Save The Bays 2013 Action"), and *The Queen v. Rt. Hon Perry Christie et al Ex parte Coalition to Protect Clifton Bay*, 2014/PUB/jrv/00015 (the "Save The Bays 2014 Action") (collectively, the "Judicial Review Actions"). The history and substance of both Judicial Review Actions are described in Jenny Afia's declaration of August 12, 2014. (*See* Afia Decl. ¶¶ 61-67.)

8.      Peter Nygård ("Nygård") and his attorney, Keod Smith, are Respondents in the 2013 Judicial Review Action. Neither Nygård nor Mr. Keod Smith is a Respondent in the 2014 Judicial Review Action. The Nygård Companies are not Respondents in either of the Judicial Review Actions.

9.      I reviewed the declaration submitted by Mr. Evans in support of the Nygård Parties' motion (the "Evans Declaration"). The Evans Declaration contains a number of factual and legal errors that I am constrained to correct as set out below.

10.     In his declaration, Mr. Evans states that a hearing in the 2014 Judicial Review Action is scheduled for October 20-21, 2014, at which time the Government Respondents will seek to set aside the Supreme Court of the Commonwealth of The Bahamas' July 17, 2014 grant of leave for judicial review for issuance of an injunction against the Government Respondents.

3

(Evans Decl. ¶ 11.)  While it is correct that the Government Respondents filed on July 30, 2014, a motion to set aside the Supreme Court's July 17, 2014 ruling (the "Motion to Set Aside"), and on September 9, 2014, filed a summons for leave to amend the Motion to Set Aside, on September 11, 2014 (at a hearing in the 2014 Save The Bays Action), the Court vacated the hearing of that motion.  On October 20-21, 2014, the Supreme Court will instead hear Save The Bays' motion for contempt against the Government Respondents, for failure to comply with the injunction granted by the Supreme Court on July 17, 2014, enjoining the Government Respondents from continuing to engage in the flawed consultation process created regarding Nygård's development plans and from considering or determining any future application for permits or approvals by Nygård in related to Nygård Cay and surrounding areas pending determination of the judicial review challenge.  Attached hereto as Exhibit A is a true and correct copy of the draft Order vacating the hearing of the Government Respondents' Motion to Set Aside prepared by my firm as counsel for Save The Bays (in The Bahamas, the Attorneys draft orders like this one), which is before the Honourable Madam Justice Rhonda Bain to be signed and filed.

   11. In the next paragraph of his declaration, Mr. Evans states that "[i]n the interim, The Bahamas Supreme Court will not allow the Coalition to seek by way of discovery any document which is unrelated to the matters in question in the action." (Evans Decl. ¶ 12.) Looking to the preceding paragraph for guidance, "[i]n the interim" appears to refer to the period of time up until the Supreme Court renders a decision on the Government Respondent's Motion to Set Aside.  Thus, Mr. Evans seems to assert that Save The Bays will not be permitted to seek in discovery any documents that are *unrelated* to the 2014 Save The Bays Action at any point before The Bahamas Supreme Court decides the Motion to Set Aside.  Mr. Evans thus concedes

that The Bahamas Supreme Court will allow Save The Bays to seek by way of discovery documents that *are related* to the 2014 Save The Bays Action. Indeed, it is undisputed that Respondents in Bahamian Judicial Review actions are obligated to produce relevant discovery. That is an obligation that attaches from the moment leave is granted in a judicial review action and continues unabated throughout the litigation regardless of whether or not the respondents file a motion seeking to have leave set aside. *See* The Privy Council's decision in *Belize Alliance v. The Department of the Environment* (No.2) [2004] Env. LR 38, per Lord Walker at pages 781-82 (a true and correct copy of which is attached hereto as Exhibit B). To that end, there is no restriction on Save The Bays seeking discovery in the United States for use in the pending Judicial Review Actions. Given that leave has been granted in both actions and both actions are still in their infancy, The Bahamas Supreme Court would certainly be receptive to relevant evidence obtained in the United States.

12.     Mr. Evans further states that "[i]n the event of a hearing, the Court will not permit the introduction of any evidence that is not relevant to the issues that are live in the case." (Evans Decl. ¶ 12.) As a preliminary matter, because Mr. Evans fails to distinguish between the two Judicial Review Actions in this paragraph of his declaration, it is unclear precisely which action—and what "hearing"—he is referring to. In any event, Mr. Evans implicitly again concedes, as he must, that The Bahamas Supreme Court will allow Save The Bays to introduce evidence that *is relevant* to disputed issues in the Judicial Review Actions. It is indisputable that, in The Bahamas, evidence relevant to ongoing judicial review actions may be offered for use in those proceedings. Petitioners seek from Mr. Feralio "discovery concerning communications and interactions between Nygård or his agents, on the one hand, and officials or employees of the Bahamian Government, on the other, as well as any authorizations Nygård received in

5

connection with the Groyne, Dredging, and Dock Works, and communications Nygård or his agents had with Bahamian officials regarding development plans at Nygård Cay" (Afia Decl. ¶ 68), all of which would certainly be relevant to the pending Judicial Review Actions. That a Bahamian court will not admit irrelevant evidence is not only tautological, but immaterial to Petitioners' Section 1782 application for relevant evidence.

13.     Mr. Evans also argues, without any support, that The Bahamas Supreme Court "would be in the best position" to protect any purported claims of "privilege or public interest immunity" that the Government Respondents to the Judicial Review Actions may raise with respect to "certain recordings and/or documents" in Mr. Feralio's possession. (Evans Decl. ¶ 23.) It is to be noted that none of the Government Respondents has sought to intervene in this Section 1782 Action to assert any alleged claims of privilege or public interest immunity, even though counsel for the Government Respondents was served with the Section 1782 filings. The Nygård Parties lack standing to assert such claims on behalf of the Government Respondents. In any event, those privilege and immunity claims to which Mr. Evans refers are limited and qualified, and cannot be determined until after discovery is made. In the event a Government Respondent has any such privilege and/or immunity claims, those claims may be raised, if at all, when Save The Bays attempts to introduce evidence obtained from Mr. Feralio in the Bahamian Judicial Review Actions.

14.     Mr. Evans also purports to rely on Mr. Nygård's "constitutional rights to privacy and confidentiality to his correspondence" in arguing that the Bahamian courts are better equipped to handle the discovery requested by Petitioners in this Section 1782 Action. (Evans Decl. ¶ 23.) However, as established in *Weblinks Limited v. Cable and Wireless Limited and the Attorney General for Anguilla*, [2001] Action No. 14 0f 2001 (a true and correct copy of which is

attached as Exhibit C), those constitutional protections apply only as against the Government; a private litigant "is not entitled to bring a constitutional claim against [another private litigant]" because "redress under the Constitution is not available against [a private litigant]." Because Petitioners in the Section 1782 Action are not Government actors, Mr. Nygård's alleged "constitutional rights to privacy and confidentiality" are not implicated by Petitioners' discovery requests.

## II.   MR. FERALIO'S FEAR OF RETURNING TO THE BAHAMAS

15.    Mr. Evans asserts that because Mr. Feralio agreed, pursuant to a July 31, 2014 agreement with Belvedere Property Management ("BPM"), to make himself available, upon request of Mr. Bacon or BPM, to testify in a domestic or foreign judicial proceeding, Petitioners should be required to "produce Feralio in the Bahamas for purposes of discovery" instead of seeking discovery from Mr. Feralio in the United States. (Evans Decl. ¶ 23.) Mr. Evans' argument is highly problematic for at least two reasons. First, Petitioners have no ability to compel Mr. Feralio to travel to The Bahamas notwithstanding the July 31, 2014 agreement, and neither do the Bahamian courts. Second, Mr. Evans conveniently ignores Mr. Feralio's testimony that he fears Nygård and has serious "concerns for [his] and [his] family's physical well-being and safety" due to Nygård's history of retaliating against those who speak out against him. (Feralio Decl. ¶ 10, dated Aug. 11, 2014.)

16.    From my own personal experience, I can attest that Mr. Feralio's fears are legitimate and in no way exaggerated. As described below, since my association with Save The Bays, I have been subject to physical violence, intimidation, threats, and personal attack at the hands of Nygård's proxies. Given my personal experiences, I would not lightly advise or

7

encourage Mr. Feralio to travel to The Bahamas to participate in the Bahamian proceedings irrespective of his July 31, 2014 agreement with BPM.

17.     For example, on April 24, 2013, I was investigating activities at Jaws Beach, located at the Clifton Heritage site west of Lyford Cay, New Providence, on behalf of Save The Bays when I was attacked by Keod Smith, Nygård's lawyer, and about eight men constructing a new dock on Jaws Beach. In the minutes before the attack, I was engaged in calm and amiable conversation with a group of men working on the dock. Upon Keod Smith's arrival, things took a dramatic turn for the worse. Keod Smith and I have long known each other, and he was aware that I am a director of Save The Bays, as is Louis Bacon. Upon his arrival, Keod Smith began to verbally insult and attack me, and physically threatened me by pushing his body up against my chest several times and pushing my chest with his hands while brandishing a large stick and screaming at me only inches from my face. At the same time, the workers who were working for Keod Smith began congregating around me in a threatening manner. I noticed that several work men had tools in their hands—including hammers and steel bars—which they held up as weapons ready to strike as they approached me. At no point during this interaction did I either assault or threaten to assault, batter, or attack Keod Smith or any of his workers.

18.     Frightened for my physical well-being, I soon decided to remove myself from the situation. However, when I got into my car in an attempt to leave, Keod Smith stood directly behind the car and instructed his workers to surround the car to prevent me from driving away. Unable to escape, I exited the car in an attempt to defuse the situation. Keod Smith quickly resumed pushing my chest in an apparent attempt to provoke a fight. I once again returned to my car determined to leave, but Keod Smith and his workers continued to surround the car preventing my escape. One of the workers stood in front of my car with a stick, others started

hitting my car with their weapons, and Keod Smith shouted "Don't let him go, don't let him go." Fearful that my life was in immediate danger, I decided to drive towards the sand of the beach in an effort to escape. As I did, someone in the group smashed the back windshield of my car with a curved steel bar, causing the windshield to shatter into the backseat of my car.

19.     I drove away from the scene of the altercation towards the street. Just when I believed I had reached safety, I looked back to see Keod Smith approaching my car. Once he arrived at my car, he reached in and took the curved steel bar from the backseat. I videotaped with my camera Keod Smith approaching the smashed rear-view window of my car and taking the curved bar from the backseat. Attached as Exhibit D is a true and correct copy of my video footage of Keod Smith.

20.     I promptly reported the attack to the Bahamian Police and provided them with a written statement and the video footage of Keod Smith. Attached as Exhibit E is a true and correct copy of the written statement describing the incident, dated April 25, 2013, that I provided to the Police.

21.     Despite the fact that I was the victim of this riot, I somehow was personally charged for allegedly causing harm to one of my assailants with my vehicle as I fled the scene to save my life. This caused me great stress and public embarrassment. Keod Smith was also criminally charged with assault, threats of harm, and damages in violation of Sections 133, 203, and 338 of the Bahamian Penal Code. Attached as Exhibit F is a true and correct copy of the written statement describing the incident, dated April 25, 2013, that I provided to the Police. In March 2014, the Attorney General intervened in the Police prosecution and withdrew the charges against both me and Keod Smith by entering a *nolle prosqui*. It is unclear to me to this day why the charges were dropped against Keod Smith given the video evidence I turned over.

9

22.     While I thankfully escaped that particular incident with Keod Smith and his workers, I have continued to suffer intimidation and threats at the hands of Nygård's supporters. On a number of occasions, including most recently on June 14, 2014, Nygård's supporters have marched through the streets of The Bahamas carrying placards with personal attacks against me, Louis Bacon, and others associated with Mr. Bacon or Save The Bays.  One such march in Nassau is detailed in Exhibits 119 through 121 attached to the August 2013 declaration of Jenny Afia.  As a result of these activities, I have felt terrorized, intimidated, and threatened.  I regret to admit that, as a result of my opposition to Nygård's environmentally-damaging development activities, there are times when I no longer feel that my country is safe for me and my family.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Freeport, Grand Bahama, The Bahamas, September 24, 2014

FREDERICK R. SMITH

10