# HERRICK

NEW YORK
NEWARK
PRINCETON
WASHINGTON, D.C.
ISTANBUL

STEVEN D. FELDMAN
PARTNER
Direct Tel:   212.592.1420
Direct Fax:  212.545.2311
Email:   sfeldman@herrick.com

October 22, 2014

**Via ECF**
Honorable Denise L. Cote
United States District Court for the
Southern District of New York United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   *In re Application of The Coalition To Protect Clifton Bay and Louis Bacon for an Order Pursuant to 28 U.S. C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, 14 Misc. 258 (DLC)

Dear Judge Cote:

We are the attorneys for Respondent Stephen J. Feralio. We write in response to the October 20, 2014 letter submitted to Your Honor by the Nygard parties.

***Procedural History***:   On October 2, 2014, Your Honor ordered that the "parties and Mr. Feldman shall discuss whether there should be a system that Feralio should adopt to organize and prioritize his review." Subsequently, I organized a conference call with counsel for Nygard and the Petitioners.  At the outset, I suggested that the review should be organized by focusing on various subpoena requests most likely to produce important, responsive files. I attempted to solicit input from counsel to prioritize the productions to Nygard's counsel.  I proposed that we initially prioritize Request No. 7 seeking documents related to Bacon, his representatives and entities.  I offered to put the remaining Requests in order based on input from counsel.

While Petitioners' counsel consented to my proposed order, the Nygard parties refused to substantively engage in the process.  For example, during the conference call, Nygard's counsel stated: "It is not my place to prioritize for you"; "We are indifferent as to when we get what"; "I am not objecting to the order of priority"; "I am not agreeing that one category is more important than the other"; and "We want to see documents so we can assert any rights we have in them, but we do not have a priority of interest in the subject matter."  Instead, Nygard's counsel asked Petitioner to voluntarily narrow the scope of the subpoena requests even though that issue was not part of the court ordered meet and confer.  As a result, without any input from the Nygard parties, I determined to first focus on Request No. 7 regarding Bacon, his representatives and entities.  Once that subject is completed, I intend to direct Feralio to prioritize other requests as outlined in my proposal to the parties.

Given Nygard counsel's unwillingness to contribute to the discussion, we were taken aback by the October 20, 2014 letter that Nygard submitted to the Court, which directly contradicts the position taken during the October 8, 2014 teleconference.  After refusing to offer input regarding the review priorities, Nygard now suggests we should prioritize documents

Page 2

related to the judicial review actions in the Bahamas, which we understand is the material related to Nygard Cay that we were producing at the outset. We had discussed with the parties our intention, after completing the review of Request No. 7, to next address Request No. 1 involving parties to the Bahamian review action. We remain willing to prioritize the review based on the Court's direction or input from the parties.

***Responsive Materials***: To date, we have made five productions. In our initial productions, we focused on Request No. 3, seeking documents concerning Nygard Cay. Based on the organization of the files -- many are organized by event and some by geography -- this allowed us to quickly get a number of responsive documents into counsel's hands. Among the materials we produced were approximately 19 video files memorializing a visit by the Prime Minister of the Bahamas and other officials to Nygard Cay where they met with Peter Nygard and the subject of construction at Nygard Cay was discussed. Accordingly, we do not understand how the Nygard parties can claim in their letter to the Court that we have produced "nothing remotely fitting" evidence related to Nygard's communications with Bahamian officials regarding his permitting and building activities at Nygard Cay. (10/20/14 Ltr. at 2.)

After the unproductive meet and confer, I directed Feralio to focus on documents concerning Bacon. As a result, our last production of 445 files included numerous responsive documents that, despite our status as a non-party, appear to be significant to the pending Bahamian litigations as they connect Nygard to the Bacon smear campaign. The most significant items in the October 16, 2014 production were at least three dozen video files and portions of video files used to create defamatory videos, including videos entitled, "5 Lies of Bacon," "Bacon KKK," "Louis Bacon Is a Fraud," and "Is Louis Bacon Moore Involved With Monsanto?" It also included motion graphic titles that were incorporated into completed videos with text such as "Bacon Is a Liar"; "Bacon Is Racist"; "Bacon's Southern Heritage Can be Traced to the Ku Klux Klan; His grandfather was the Grand Dragon of the KKK"; "Cleaning Up Bacon's Mess"; "Nygard Cleaning Up After Bacon"; "Bacon is Robbing Bahamians of their Livelihood"; "Bacon Tore Down the Dock" and "Did Not Save Reefs." We strongly disagree with Nygard's assertion that the most recent production instead consisted of "massive volumes of irrelevant files." (10/20/14 Ltr. at 2.) This week's production that we will distribute tomorrow will include videos involving Peter Nygard communicating about the smear campaign.

***Ongoing Review***: We also disagree with Nygard's suggestion that Feralio's effort to review the electronic files should be supplemented at this time by Herrick attorneys. Mr. Feralio is uniquely situated to review these files because the vast majority were filmed by him. As the videographer who recorded, photographed and lived through the events, Feralio has been able to review the files on high speed, fast-forwarding through the videos. He remembers the events, recognizes the people, and knows the physical locations. Someone who was not present when the videos were recorded would not necessarily understand the context of communications, recognize the individuals who appear in the videos, or identify the locations recorded there. We would significantly sacrifice accuracy by substituting in place of Feralio our associates with no personal knowledge of the people, the events or context, the locations, or the substance of the recordings. The quality of the review would surely suffer dramatically.

Page 3

We look forward to addressing these and any other issues raised by the Court at the upcoming conference so we can continue to produce responsive materials as efficiently as possible.

    Respectfully submitted,

    s/ Steven D. Feldman

    Steven D. Feldman

cc:    Counsel for Petitioners (by ECF)
       Counsel for Nygard International Partnership and Nygard Inc. (by ECF)