**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Orin Snyder
Direct: +1 212.351.2400
Fax: +1 212.351.6335
OSnyder@gibsondunn.com

October 22, 2014

VIA ECF

The Honorable Denise L. Cote
United States District Court for the Southern District of New York
500 Pearl Street, Room 1610
New York, NY 10007

Re:   In re Application Pursuant to 28 U.S.C. § 1782, No. 14-Misc-258

Dear Judge Cote:

We write in response to the October 20, 2014 letter of the Nygård Parties ("Nygård").

The Feralio Production.  On September 11, 2014, Your Honor ordered Mr. Feralio to review two years of raw footage for responsiveness to Petitioners' subpoena and to prepare a "rolling" production to Nygård.  Hr'g Tr. at 21:20-21.  As the letter filed earlier today by Feralio's counsel makes clear, that review process is working well.  To date, working full-time for the past five weeks, Feralio has reviewed approximately 14,800 files and timely made five productions to Nygård's counsel of a total of approximately 5,000 responsive video files and images.  Dkts. 40, 67, 86, 89-90.  Feralio's counsel explains that many of these files are directly relevant—indeed "significant"—to the Bahamian lawsuits.  For example, just last week, Feralio produced dozens of video files whose titles—including "5 Lies of Bacon," "Bacon is Racist," and "Louis Bacon is a Fraud"—make their relevance to the Bahamian defamation lawsuits obvious.  (These are videos we allege Nygård directed Feralio to create and upload to YouTube using fictitious names.)  The produced videos, created by Nygård's agent, directly link Nygård to the smear campaign—a critical fact that Nygård never has acknowledged.[1]  Feralio's counsel states that Feralio will produce tomorrow evidence of "Nygård communicating about the smear campaign," further proof of Nygård's involvement in the smear campaign.

Despite this evidence, Nygård proffers a false narrative that "virtually none of the files are material to the claims . . . in the Bahamian Actions" and that "this exercise [is] a colossal waste of time and resources."  Dkt. 91 at 1, 2.  Nygård also seeks to tarnish the production effort by referencing videos of volleyball games, regatta races, and private parties at Nygård Cay.  Although we have not seen these videos, Feralio believes they are responsive, and they may well contain relevant evidence concerning, for example, the disputed coastline, the groynes, and the dredging machinery; the expansion of the coastline at Nygård Cay over time; Nygård's motives for expanding the beach; and additional witnesses who may be familiar with Nygård's environmentally destructive activities.  Indeed, as Feralio's counsel points out, Feralio's productions include 19 video files concerning a meeting between Nygård and Bahamian officials (including the Prime Minister) during which construction at Nygård Cay was discussed—a potentially critical piece of evidence that Nygård's letter fails to disclose.[2]

---

[1] Nygård reluctantly acknowledges the production of a "handful of videos" concerning Mr. Bacon's acceptance speech for a prestigious environmental award—a speech whose substance Nygård continues to misrepresent. Ex. A ¶ 31.  Nygård claims that "there is nothing new to discover here" because Mr. Nygård previously discussed this video. Dkt. 91 at n.1.  But having discussed the video is not the same thing as proof that Nygård's agent created and edited the video on Nygård's instructions.  Nygård's efforts to minimize are not credible.

[2] Nygård's complaints regarding relevance are misplaced.  It is for the Bahamian courts, not the Nygård Parties, to decide whether the material produced by Feralio in response to the Section 1782 subpoena is relevant to or admissible in the pending foreign actions.  See In re Applic. L & M Galleries, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) ("the court should be particularly wary of denying [Section 1782] discovery on relevance grounds").  By its nature discovery leads to the production of more material than is relevant to or admissible in a lawsuit, and that allegation alone falls far short of proving that the subpoena requests yield no evidence relevant to the subject matter of the foreign lawsuits.

**GIBSON DUNN**

<u>Feralio's Review Process Should Not be Disrupted.</u>  Because Feralio's productions now contain numerous videos apparently with direct proof of Nygård's involvement in the smear campaign, Nygård seeks to hijack the process. Nygård now wants Feralio to delay production of this damning evidence and re-focus his attention on the Judicial Review Actions. He also seeks to narrow the subpoena, hoping to suppress damaging evidence. Nygård's self-serving requests should be denied.[3]

Nygård's request to reprioritize is an about-face from his counsel's prior categorical statements, in an October 8 meet and confer, that Nygård was "indifferent" to the priority of production. The true purpose of Nygård's requests is plain: to impede the production of highly probative evidence, not to promote "efficiency," as Nygård pretends. Dkt. 91 at 2. As counsel to Feralio attests, the Court-ordered process is efficient and effective and Feralio is working hard to produce responsive materials in an expedited fashion. Nygård's efforts to narrow the subpoena under the guise of "efficiency" also fall flat. Whatever the scope of the subpoena, Feralio must still review the same video files to make responsiveness determinations. No efficiencies would be gained by further narrowing.

Without a shred of evidence, Nygård also proclaims that Petitioners seek to delay the Judicial Review Actions for imagined political reasons. The claim is a fiction, contradicted by the evidence, and defies all logic. Petitioners have never sought to delay adjudication of the Bahamian Actions as a result of the filing of this Section 1782 Action. Rather, the Bahamian Government—not Save The Bays—has sought to delay adjudication of a Judicial Review Action pending the 1782 proceedings. *See* Ex. B ¶¶ 49-52. Nygård's other inflammatory statements about Mr. Bacon's supposed political influence and motives are unsubstantiated, outrageous, and intended for a different audience.[4] They read like the rantings one might find on a partisan blog, rather than in a letter to this Honorable Court. In any event, the next scheduled election in the Bahamas is 30 months away (May 2017) and is irrelevant; Petitioners will continue to aggressively prosecute the Bahamian lawsuits long before that time.

<u>Nygård's Procedural Maneuverings</u>.  Nygård's October 20 letter caps several weeks of procedural gamesmanship over which the letter elides. On the parties' October 8 conference call, Petitioners' counsel did not "refuse to engage" in a dialogue regarding the narrowing of the subpoena; rather, Petitioners' counsel requested that Nygård put any suggestions in writing so that there would be a concrete proposal for discussion. Nygård was silent on the issue for the next nine days. Then, on Friday, October 17 at 7:00 p.m., Nygård sent Petitioners a 6-page letter proposing to narrow the scope of the subpoena and re-prioritize the review, and demanding a meet-and-confer the next business day. Dkt. 91-2. Petitioners requested two additional days to respond to Nygård's letter. Dkt. 91-3. Nygård did not respond to Petitioners' request; instead, the very next day, Nygård rushed to Court, claiming that any discussion would be "futile," despite Petitioners' promise to confer in writing. Dkt. 91 at 2. Nygård then filed the 6-page October 17 letter as an attachment to the October 20 letter to Your Honor (which also attached Petitioners' five-line extension request). Dkts. 91-2 & 91-3. This was a transparent ploy to circumvent this Court's two-page letter requirement and constrain Petitioners to a two-page response to Nygård's eight pages of argument. Nygård's premature rush to Court, before any meet and confer could even occur, violates both the Local Rules and Your Honor's Individual Practices. *See* L.R. 37.2; Individual Practices § 2(c).[5]

In sum, Nygård's request is an attempt to impede the orderly production of the Feralio footage precisely because, as Nygård well knows, the productions contain significant evidence of Nygård's role in the smear campaign and destruction of the Bahamian coastline. Nygård's requests should be denied.

---

[3] This Court has already rejected Nygård's efforts to seek a second bite at the 1782 apple through, for example, a request to narrow the subpoena following production to Nygård. Hr'g Tr. at 26:12-15. Nygård has already fully briefed the merits of the 1782 Application, Dkt. 49, and, in any event, lacks standing to challenge or narrow the subpoena on any ground other than privilege, Dkt. 62 at 6.

[4] Just as Nygård intended, these inflammatory allegations were re-published today in The Bahamas Tribune. *See* Ex. C.

[5] This is not the first time Nygård has filed documents in violation of the Local Rules and Your Honor's Individual Practices. Nygård has submitted letters in excess of Your Honor's page limits (Dkt. 78) and sought a modification of the Order to Show Cause without regard to Rule 3(b)(iv) of the Local Rules for the Division of Business Among District Judges (Dkt. 28).

**GIBSON DUNN**

Respectfully submitted,

*Orin Snyder/sh*

Orin Snyder

cc:   Marc E. Kasowitz and Aaron H. Marks (by e-mail)
      Steven D. Feldman, counsel for Stephen Feralio (by e-mail)