UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :        14mc258(DLC)
IN RE APPLICATION OF THE COALITION TO  :
PROTECT CLIFTON BAY AND LOUIS BACON    :        OPINION AND ORDER
FOR AN ORDER PURSUANT TO 28 U.S.C.     :        _____
§ 1782 TO CONDUCT DISCOVERY FOR USE IN :
FOREIGN PROCEEDINGS.                   :
                                       :
-------------------------------------- X

APPEARANCES

For petitioners the Coalition To
Protect Clifton Bay and Louis Bacon:

Orin Snyder
Avi Weitzman
Mary Beth Maloney
Ilissa Samplin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

For respondent Stephen Feralio:

Steven David Feldman
Sharon Anne O'Shaughnessy
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016

For third-party intervenors Peter
Nygård, Nygård International
Partnership, and Nygård Inc.:

Marc E. Kasowitz
Aaron H. Marks
Kenneth R. David
KASOWITZ, BENSON, TORRES & FRIEDMAN
LLP
1633 Broadway
New York, NY 10019

DENISE COTE, District Judge:

On August 13, 2014, the Coalition To Protect Clifton Bay (commonly referred to as "Save the Bays") and one of its directors, Louis Bacon ("Bacon") (collectively "petitioners") applied for an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in foreign proceedings.  Specifically, petitioners seek to obtain from respondent Stephen Feralio ("Feralio") material to be used in seven Bahamian proceedings. Two of those are judicial review proceedings[1] brought by Save the Bays that name various respondents, including Peter Nygård ("Nygård").  The other five are civil proceedings brought by Bacon against various individuals associated with Nygård.  On September 18, 2014, Nygård along with two of his companies -- Nygård International Partnership ("Nygård International") and Nygård Inc. (collectively "Nygård companies," and collectively with Nygård "Nygård parties") -- moved to intervene in opposition to the § 1782 petition.  For the reasons discussed below, the petition is granted.

BACKGROUND

Since 1986, Nygård has owned a parcel of land in the Bahamas known as "Nygård Cay."  Since 1993, Bacon has owned a

---

[1] A Bahamian judicial review proceeding is apparently used to challenge the propriety of governmental action or inaction.

parcel of land in the Bahamas known as "Point House."  Nygård
Cay and Point House neighbor one another.

     At base, the two judicial review proceedings brought by
Save the Bays challenge the Bahamian government's alleged lack
of oversight over Nygård's expansions and proposed expansions of
Nygård Cay.  The five civil proceedings brought by Bacon
principally allege defamation on the part of eleven parties who
Bacon claims operate as proxies for Nygård in effecting a smear
campaign against Bacon.

     During various periods since May 2011, Feralio worked as a
videographer for Nygård, taping over one thousand hours of
footage, which Feralio still possesses.  Feralio filmed Nygård's
daily life, both personal and professional, including meetings
between Nygård and Bahamian officials.  He also allegedly aided
in the production of anti-Bacon videos.

     Feralio had three contractual agreements with the Nygård
companies.  These agreements appear to include ownership and
confidentiality provisions regarding Feralio's work, as well as
forum selection clauses designating California state court as
the situs for litigating disputes.  Although Feralio has now
agreed to aid petitioners in prosecuting their Bahamian actions,
he is reluctant -- in part because of these contractual
agreements -- to provide discovery in the absence of judicial

intervention.[2]

Petitioners seek court authorization both to subpoena from Feralio video recordings and documentary evidence such as handwritten notes and email correspondence, and to depose Feralio about his personal knowledge relevant to the Bahamian proceedings.  Petitioners filed their application on notice to Feralio, who agreed to accept service -- and can currently be found -- in the Southern District of New York.

Petitioners anticipated that, with respect to the requested discovery, third-party rights might be asserted not only by the parties named in the Bahamian proceedings, which include Nygård, but also by the Nygård companies.  Petitioners were right:  The Nygård parties seek an order (i) granting their motion to intervene; (ii) denying the § 1782 petition; and (iii) quashing the subpoena sought by petitioners.[3]

At a conference on September 11, counsel for petitioners, Feralio, and the Nygård parties were heard.  Since that conference Feralio has been reviewing his video records and

---

[2] Indeed, after petitioners filed the instant § 1782 application but before the Nygård parties filed their motion to intervene, the Nygård parties brought suit against Feralio in California state court alleging breach of contract.

[3] For present purposes, the Nygård parties' request that the subpoena be quashed is not relevantly distinct from their request that the § 1782 petition be denied.

supplying to the Nygård parties on a weekly basis records that he believes are responsive to the subpoenas.  During an on-the-record conference call with the same parties on October 23, the Court ordered Feralio to complete his production by November 21, 2014 at the very latest.

The Nygård parties' motion to intervene in opposition to the § 1782 petition was filed on September 18.  On September 24 petitioners served a supplemental memorandum supporting the petition and responding to the motion to intervene.  The motion became fully submitted on September 29.

DISCUSSION

Before the Court are the petition for an order pursuant to § 1782 to conduct discovery for use in the Bahamian proceedings and the Nygård parties' motion to intervene in opposition to the petition.  Because the petition will be granted in the face of the asserted opposition, the Nygård parties' ability and standing to intervene can be assumed.  Cf. In re Grand Jury Matter, 770 F.2d 36, 39 (3d Cir. 1985) (assuming without deciding that interested third party had standing to contest denial of motion to quash subpoena because "the standing constraints at issue [in that context] do not affect the subject matter jurisdiction of the federal courts, but rather, involve

prudential limitations on the exercise of our jurisdiction").[4]

     Pursuant to § 1782:

> The district court of the district in which a
> person . . . is found may order him to give his
> testimony or statement or to produce a document or
> other thing for use in a proceeding in a foreign . . .
> tribunal . . . .  The order may be made . . . upon the
> application of any interested person and may direct
> that the testimony or statement be given, or the
> document or other thing be produced, before a person
> appointed by the court.

28 U.S.C. § 1782(a).  "In ruling on an application made pursuant
to section 1782, a district court must first consider the
statutory requirements and then use its discretion in balancing
a number of factors."  Brandi-Dohrn v. IKB Deutsche
Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012).  The statutory
requirements are "(1) the person from whom discovery is sought
resides (or is found) in the district of the district court to
which the application is made, (2) the discovery is for use in a
foreign proceeding before a foreign tribunal, and (3) the
application is made by a foreign or international tribunal or
any interested person."  Id.

     "Once the statutory requirements are met, a district court

---

[4] Similarly, because, as discussed below, the petition is granted
on the merits, the Court need not reach petitioners' alternative
argument that the Nygård parties' requests be denied as a
sanction for improper actions that petitioners allege the Nygård
parties have taken since the time the § 1782 petition was filed.

is free to grant discovery in its discretion . . . ."  Id.

(citation omitted).  In Intel Corp. v. Advanced Micro Devices,

Inc., 542 U.S. 241 (2004), the Supreme Court outlined a number

of factors that a district court should consider in deciding

whether to exercise this discretion.  These have become known as

the "Intel factors," and are:

> First, when the person from whom discovery is
> sought is a participant in the foreign proceeding the
> need for § 1782(a) aid generally is not as apparent as
> it ordinarily is when evidence is sought from a
> nonparticipant in the matter arising abroad.  A
> foreign tribunal has jurisdiction over those appearing
> before it, and can itself order them to produce
> evidence.
>
> Second, a court presented with a § 1782(a)
> request may take into account the nature of the
> foreign tribunal, the character of the proceedings
> underway abroad, and the receptivity of the foreign
> government or the court or agency abroad to U.S.
> federal-court judicial assistance.
>
> Third, a district court could consider whether
> the § 1782(a) request conceals an attempt to
> circumvent foreign proof-gathering restrictions or
> other policies of a foreign country or the United
> States.
>
> Finally, unduly intrusive or burdensome requests
> may be rejected or trimmed.

Brandi-Dohrn, 673 F.3d at 80-81 (citation omitted).  In addition

to considering the four Intel factors, "a district court may

deny the section 1782 application where it suspects that the

discovery is being sought for the purposes of harassment."  Id.

at 81.

Here, the three statutory requirements are not in dispute.
First, the person from whom discovery is sought, Feralio, can
currently be found in the Southern District of New York.
Second, the discovery sought is for use in ongoing foreign
proceedings.  Third, the application is made by interested
persons:  Save the Bay is the petitioner in the two judicial
review proceedings and Bacon is the plaintiff in the five civil
defamation actions.

Additionally, in this case the Intel factors weigh in favor
of granting the petition.  With respect to the first factor, if
"participant" refers only to the parties before the foreign
tribunal, then the first factor would weigh in favor of granting
the petition here, as Feralio is not a party in the Bahamian
proceedings.  If, however, "participant" refers more broadly to
anyone who might appear before the foreign tribunal as a
witness, then the first factor may weigh against granting the
petition here, as Feralio has agreed in writing that, at the
request of the petitioners, he will make himself available to
testify "in any domestic or foreign judicial or arbitral
proceedings" related to the Nygård parties, which would seem to
include the Bahamian proceedings.

There is nothing in the way of binding precedent on the

meaning of "participant" in the Intel analysis.  Even assuming, however, that the first Intel factor can weigh against granting a petition when the respondent may appear as a nonparty witness in the foreign proceedings, in this case that factor does not weigh so strongly as to end the analysis.

The second Intel factor is not in dispute.  Nothing about "the nature of the foreign tribunal, the character of the proceedings underway abroad, [or] the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" counsels against a grant of the petition in this case.

As for the third Intel factor -- "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" -- the Nygård parties do not point to, nor has the Court found, any proof-gathering restrictions or other policies that would be circumvented by granting the petition here.  The Nygård parties do point to an affidavit representing that discovery has closed in one of the Bahamian proceedings and that, for all intents and purposes, there may be no further discovery in another of the Bahamian proceedings.  But these representations do not constitute "proof-gathering restrictions or other policies" for purposes of the Intel analysis.

With respect to the fourth Intel factor -- whether the request is "unduly intrusive or burdensome" -- the respondent here, Feralio, does not claim undue intrusion or burden.  The Nygård parties cite no authority for the proposition that intrusion and burden are to be assessed from the perspective of not only the § 1782 respondent, but also interested third parties who wish to review the requested materials to assert rights and objections.  Even were such considerations relevant to the Intel analysis, the Nygård parties, while they state that reviewing the requested production is intrusive and burdensome, have not made a showing that such intrusion or burden is "undue."  Accordingly, the fourth factor does not counsel against granting the petition here.

The Second Circuit has instructed courts to also consider whether the discovery is being sought for the purposes of harassment.  The Nygård parties point out that certain materials submitted in support of the petition contain allegations that besmirch Nygård's character.  Indeed, in connection with this § 1782 action petitioners have submitted materials that reflect poorly on Nygård, and the Nygård parties have submitted materials that reflect poorly on Bacon.  The Court has already taken measures to place inappropriate accusations beyond the public record.  That petitioners' submissions have included

irrelevant allegations, however, does not indicate that the petition was brought solely or even principally to harass. The discovery that will follow the granting of this petition is of material created by Nygård's own videographer, and it is intended for use in petitioners' prosecution of the Bahamian proceedings.

The Nygård parties advance two additional reasons for denying the petition, neither of them grounded in the factors the law requires courts to consider in deciding whether to exercise their discretion. First, appealing to the court's "inherent power to preserve judicial integrity," the Nygård parties argue that to grant the petition here would be to facilitate the discovery of misappropriated material, as they contend that -- in part because of the contracts between Feralio and the Nygård parties -- the subpoenaed materials are subject to strict ownership, confidentiality, and copyright protections. But Nygård cites no cases, and this Court has found none, where a § 1782 petition has been denied based on this type of consideration. The admissibility of any of this material will be resolved by a Bahamian court and is not a matter that this Court may determine or consider. Brandi-Dohrn, 673 F.3d at 82 ("[A] district court . . . should not consider the admissibility of evidence in the foreign proceeding in ruling on a section

1782 application." (emphasis omitted)).

Second, appealing to the Court's "inherent power to manage its docket," the Nygård parties argue that to the extent Feralio's possessory rights are in dispute, that dispute should be resolved in California state court before this § 1782 action is decided.  Whether Feralio might be subject to a breach of contract action in California, however, has no bearing on whether the subpoenaed materials are discoverable pursuant to § 1782 for use in foreign proceedings.

CONCLUSION

Having considered the factors that the law requires, the Court chooses to exercise its discretion to grant the § 1782 petition.  During the October 23 telephone conference, petitioners, Feralio, and the Nygård parties committed to meet and confer to reach agreement on the appropriate scope of the subpoena that would issue upon a grant of the § 1782 petition. At a subsequent on-the-record telephone conference on October 28, the Court issued rulings on the remaining points of disagreement with respect to the scope of the subpoena.  The Court also set out a procedure, reflected in an Order to be issued in conjunction with this Opinion, governing production of

the subpoenaed material.

SO ORDERED.

Dated:     New York, New York
           October 28, 2014

                              _____
                                        DENISE COTE
                              United States District Judge