# Kasowitz, Benson, Torres & Friedman LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

AARON H. MARKS
212-506-1721
AMARKS@KASOWITZ.COM

ATLANTA
HOUSTON
MIAMI
NEWARK
SAN FRANCISCO

December 11, 2014

BY E-FILING
The Honorable Denise L. Cote
United States District Court for the
   Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: *In re Application of The Coalition To Protect Clifton Bay*, No. 14 MC 258 (S.D.N.Y.)

Dear Judge Cote:

We write on behalf of the Nygård Parties concerning the production drive received from Feralio on December 4, 2014 (the "FCP Drive"), two days after the Court-ordered production deadline, which contained a massive volume of Final Cut Pro ("FCP") project files and their associated video, audio, and text files. The FCP Drive contains over three Terabytes of data comprised of over 40,000 files. For comparison's sake, between September 18 and December 3, in his weekly productions, Feralio's counsel produced to us in total slightly more than 1.5 Terabytes of data comprised of approximately 10,140 files as responsive to the Amended Subpoena. As explained below, because review of these materials and production to Petitioners would be redundant, highly burdensome, and prejudicial to the Nygård Parties, we respectfully request that the Court issue an order excepting the FCP Drive from the production protocol in the Court's October 28 Order and not require the production of the FCP Drive.

Final Cut Pro is professional video editing software manufactured by Apple. FCP project files are essentially database files linking together numerous separate video, audio, and text files into "project" files. As Feralio's counsel acknowledged in his November 12 Letter to the Court (Dkt. 108), and recently confirmed in an e-mail, each video, audio, or text file responsive to the Amended Subpoena that makes up the Final Cut Pro project files on the FCP Drive has already been separately produced by Feralio to the Nygård Parties, and subsequently produced to Petitioners (with the exception of 100 files that are still subject to the meet-and-confer process). *See* Dkt. 108; *see also* December 12 E-mail from Stephen Feldman, attached hereto as Exhibit A. Thus, as far as responsive clips and files are concerned, it is not disputed that the FCP Drive is duplicative and redundant of what the Nygård Parties already reviewed and produced to the Petitioners.

Feralio's counsel also acknowledges that the FCP Drive contains massive volumes of non-responsive files within the FCP project files. *See* Ex. A. Specifically, the FCP Drive contains over three Terabytes of data and over 40,000 files. Therefore, the FCP Drive potentially contains approximately 1.5 Terabytes of data and 30,000 files that are not responsive to the Amended Subpoena, and that is based on Feralio's interpretation of responsiveness.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

   In light of the apparent redundancy of responsive files and the massive volume of non-responsive files contained within the FCP project files on the FCP Drive, we respectfully submit that the FCP Drive need not be, and should not be, produced to Petitioners. To require the Nygård Parties to review, make determinations and designations, and produce these tens of thousands of files would not only be excessively burdensome, wasteful, and unnecessary, but would also completely negate the months-long process of review and production in which Feralio and the Nygård Parties just engaged. Additionally, if the Court required that the FCP Drive be produced, considering the volume of data involved, it will take several weeks for the Nygård Parties to review all of the files on the FCP Drive.[1] The Nygård Parties suspect that the true reason for this three Terabyte post-deadline data dump -- the full volume and non-responsive nature of which was never disclosed during numerous meet-and-confers -- is to further delay the Judicial Review actions in the Bahamas, which, if not completed by December 19, will require additional court dates. This is particularly troubling considering that the FCP Drive could have been produced in September.

   Petitioners would not be prejudiced if the relief requested herein were granted since all responsive files have already been produced. During a meet and confer among the Nygård Parties, Petitioners, and Feralio on December 9, 2014, counsel for Feralio and Petitioners argued that the FCP Drive should be produced because (1) they contend at least part of each FCP "project" file is responsive, and thus the entire "project" file -- including the non-responsive files within that "project" file -- is responsive; and (2) Petitioners are entitled to obtain evidence of how the various video and audio clips were combined into the final videos that were made. Neither of these reasons remotely contends with the burden and prejudice to the Nygård Parties of producing tens of thousands of non-responsive files. As Feralio concedes, all of the underlying responsive files have been produced already, including any final version of a movie made by the FCP project files that Feralio deemed responsive, so Petitioners already have the evidence of how the various underlying clips were combined to make a final video. Further, as the Court is well-aware, Feralio is being paid handsomely by Petitioners to testify -- including in the Bahamas -- about, among other things, how these videos were made and what he may or may not have done to create the final videos. Thus, the production of the actual FCP project file is completely unnecessary. Although the production of the FCP project files is unnecessary, in an effort to reach agreement with counsel for Feralio and Petitioners and not involve the Court in this dispute, during our meet and confer, the Nygård Parties offered to the produce only the FCP project files without the underlying referenced video, audio, text, and effects files. Having the FCP project files would allow Petitioners to ascertain the names of the underlying files in each project, which, if they are responsive to the Amended Subpoena, they already have (or will have shortly). Petitioners rejected our offer.

   The Nygård Parties respectfully request relief from the Court's October 28 Order requiring them to produce the responsive material on the FCP Drive, or, in the alternative, an order requiring the Nygård Parties to produce only the FCP files and not the underlying files.

---

[1]   From our initial assessment of the FCP Drive -- it required three days to copy it -- there are also technical issues that will make this review even more burdensome. When the FCP project files are loaded, an error message states that "[s]ome files went offline," meaning that the project cannot locate all of the referenced underlying files, and some of the projects are missing all of the referenced underlying files. The FCP Drive itself contains a labyrinth of folders and files that do not have file identification numbers. *See, e.g.*, Exhibit B attached hereto. And, the FCP Drive was not produced as it was maintained in the ordinary course of business. Thus, multiple issues exist in addition to the duplicative nature of the files and unnecessary burden of a re-review that weigh against production of the FCP Drive.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Thank you for consideration of these matters.

Respectfully,

*Aaron Marks /ICS*

Aaron H. Marks

cc: Counsel for Petitioners (by E-Filing)
Counsel for Stephen J. Feralio (by E-Filing)